**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
: 
In re: : **Chapter 11**
: 
BH S&B HOLDINGS LLC, *et. al.,* : **Case No. 08-14604 (MG)**
: 
Debtors. : **(Jointly Administered)**
: 
---------------------------------------------------------------- x

### STIPULATION AND ORDER (I) MODIFYING THE AUTOMATIC STAY TO PERMIT SETOFF AGAINST CERTAIN CASH COLLATERAL AND (II) RESOLVING AND SETTLING CERTAIN ISSUES BETWEEN DEBTORS AND JPMORGAN CHASE BANK, N.A.

This matter having been brought before this Court on November 26, 2008, on an emergency basis, by BH S&B Holdings LLC (the "Debtor", and together with the other above-captioned debtors, collectively, the "Debtors") and JPMorgan Chase Bank, N.A. (the "Bank"), by and through their respective undersigned counsel, seeking an order of this Court (i) lifting the automatic stay only to the extent to permit the Bank to setoff on the L/C Cash Collateral Account (as defined below) in an amount equal to each Reimburseable L/C Draw (as defined below), (ii) authorizing and directing the Bank to seek written authorization from the Debtor to honor any Discrepant L/C Drawing Documents (as defined below) and to honor and pay any draw under such Discrepant L/C Drawing Documents so authorized by the Debtor; and (iii) authorizing and directing the Bank to honor and pay any D/P's (as defined below) that are authorized by the Debtor and presented for payment during the Debtor's Chapter 11 case to the extent that the Debtor has sufficient funds in its Electronic Disbursement Account (as defined below) to cover any such D/P's.[*]

---

[*] Any term not defined herein shall have the meaning ascribed to it in either (i) the Interim Order Authorizing Continued Use of Existing Bank Accounts, Cash Management System, and Checks and Business

1163401.1

In support of the relief requested herein, the Bank and Debtor respectively represent, and the Court hereby finds, as follows (such representations are without prejudice to the rights of any parties in these Chapter 11 cases, including, without limitation, the Official Committee of Unsecured Creditors appointed in these Chapter 11 cases):

**I.   LETTERS OF CREDIT**

A.   On or about September 26, 2008, the Bank and Debtor entered into and executed a Continuing Agreement for Commercial & Standby Letters of Credit (the "LC Agreement"). A true and correct copy of the LC Agreement is attached hereto as Exhibit A.

B.   Pursuant to the terms of the LC Agreement, the Bank has made certain letters of credit (each individually, a "Letter of Credit", and collectively, "Letters of Credit") available to provide payment to beneficiaries designated by the Debtor who have sold goods to the Debtor. As of November 19, 2008 (the "Petition Date"), the aggregate undrawn face amount of the Letters of Credit was $2,789,440.82.

C.   Under the LC Agreement, the Debtor is required to reimburse the Bank for any draws made on the Letters of Credit by the appropriate beneficiary that are honored and paid by the Bank in accordance with the terms of the Letter of Credit and the LC Agreement (a "Reimburseable L/C Draw"). This reimbursement obligation of the Debtor is secured by cash of the Debtor held at the Bank in account no. **5143 (the "L/C Cash Collateral Account") pursuant to the terms of the Assignment of Deposit Account Agreement (the "Assignment"), executed by the Debtor and delivered to the Bank on or about September 25, 2008. A true and correct copy

---

Forms, entered on November 21, 2008 ("Interim Cash Management Order") or (ii) the Interim Order (A) Authorizing the Debtors to Obtain Super-Priority Senior Secured Postpetition Financing, (B) Providing Adequate Protection, (C) Prescribing Form and Manner of Notice and Setting the Time for the Final Hearing, entered on November 24, 2008 (the "Interim DIP Order").

of the Assignment is attached hereto as Exhibit B.  As of the Petition Date, the amount of the Debtor's cash contained in the L/C Cash Collateral Account was $2,954,669.28.

D. Draw requests against the Letters of Credit continue to be made.  In order for the Bank to avoid being in an overdraft position on the Debtor's account with respect to these Letters of Credit, the Bank requires that it be able to simultaneously setoff on the L/C Cash Collateral Account in an amount equal to each Reimburseable L/C Draw.

E. Certain draw requests made from time to time on the Letters of Credit are accompanied by drawing documents that, in some manner, fail to comply on their face with the stipulated terms and conditions of the Letter of Credit on which the draw is being requested (collectively, "Discrepant L/C Drawing Documents").  It is customary for the Bank to accept such Discrepant L/C Drawing Documents for purposes of honoring and paying the requested Letter of Credit draw, <u>provided</u>, <u>that</u>, the Debtor waives in writing to the Bank all discrepancies contained in the Discrepant L/C Drawing Documents.  All such discrepant Letter of Credit drawings, to the extent such discrepancies are waived by the Debtor, are Reimburseable L/C Draws.

## II. DOCUMENTS AGAINST PAYMENT

F. The Debtor maintains at the Bank an electronic disbursement account no. **1092 (the "Electronic Disbursement Account").  From time to time, the Bank receives documents against payment ("D/P's") against the Electronic Disbursement Account submitted by or on behalf of overseas trade vendors and/or inventory suppliers of the Debtor requesting payment for goods that have yet to be sold to the Debtor.  Upon the Bank funding the D/P's, which funding is conditioned upon the Debtor having sufficient funds in the Electronic Disbursement Account to cover such D/P's, the documents of title for the goods in question are released to the Debtor (or its designee) so that the Debtor may receive the goods upon their arrival into the U.S.

**III. ACCOUNTS**

G. In addition to the L/C Cash Collateral Account and the Electronic Disbursement Account, the Debtors maintain the following accounts at the Bank (together with any account of Debtors hereafter opened or established at the Bank, collectively, the "Bank Accounts"):

(1) Operating Account (account no. **4608)

(2) Controlled Disbursement Account (account no. **1100)

(3) Payroll Account (account no. **1084)

(4) Escrow Account (account no. **6768)

(5) Depository Account (account no. **5632)

(6) Depository Account (account no. **5640).

H. Pursuant to the Interim Cash Management Order, the Debtors were granted the right to use all of their existing Bank Accounts without interruption to receive, honor, process and pay, to the extent of any available funds in the Bank Accounts, any and all checks and drafts issued on the accounts post-petition, and although the Bank's rights of offset and similar rights were preserved and not waived or impaired (to the extent provided for in the Interim Cash Management Order), the Bank was enjoined from offsetting, affecting or otherwise impeding any funds deposited by or on behalf of the Debtors into the Bank Accounts on account or by reason of any claim (as such term is defined in Section 101(5) of the Bankruptcy Code) of the Bank against any of the Debtors that arose prior to the Petition Date.

I. The Bank represented to the Court that as a result of the pre-petition overdraft on the Debtor's Controlled Disbursement Account (account no. **1100) ("the Overdrawn Account") in the aggregate amount of approximately $1.3 million, any amounts deposited into such account would be automatically credited to the overdrawn amount.

J. The Bank further represented to the Court that the Debtors could use any of its existing accounts or open a new account to process and pay, to the extent of any available funds, any and all checks and drafts.

NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED, AND UPON COURT APPROVAL HEREOF, IT IS ORDERED THAT:

1. The automatic stay pursuant to 11 U.S.C. §362 is hereby lifted only to the extent necessary to permit the Bank to use the funds in the L/C Cash Collateral Account in an amount equal to each Reimburseable L/C Draw that is made during the Debtors' Chapter 11 case in satisfaction of the Debtor's reimbursement obligations to the Bank in respect of such Reimburseable L/C Draw made pursuant to the LC Agreement, the Assignment and this Stipulation and Order. To the extent of any conflict or inconsistency with the terms of the LC Agreement or the Assignment, on one hand, and the terms of this Stipulation and Order, on the other hand, the terms and conditions of this Stipulation and Order shall control and govern

2. In the case of any Discrepant L/C Drawing Documents received by the Bank, the Bank is authorized to and will seek the Debtor's authorization to waive such discrepancies. The Debtor's representative Robert Tetreault, consultant to RAS Management Advisors, LLC ("RAS"), and Timothy Boates, President of RAS and the Debtors' Chief Restructuring Officer, are hereby authorized to waive such discrepancies. In the event that the Bank receives written confirmation from either Mr. Tetreault or Mr. Boates of the Debtor's agreement to waive such discrepancies, then the Bank may honor and pay such Letter of Credit draw request and such draw(s) shall constitute Reimburseable L/C Draws for all purposes of this Stipulation and Order, including, without limitation, Paragraph 1 above.

3. To the extent that the Debtor has sufficient funds in the Electronic Disbursement Account or any other Bank Account against which D/P's may be submitted during the Chapter 11 cases, the Bank is authorized and directed to honor and pay such D/P's that are authorized to be paid by the Debtor in its business judgment.

4. The Bank hereby agrees to permit the Debtor to immediately use an existing Bank Account (other than the Controlled Disbursement Account) or open a new regular checking account (and not a controlled disbursement account) at the Bank for the purpose of allowing the Debtors to receive, honor, process and pay, to the extent of any available funds, any and all checks and drafts issued on such account during the Chapter 11 cases; <u>provided</u> <u>that</u> such new accounts are designated as Debtor in Possession accounts, that all new checks, business forms and other documents ordered for such accounts shall bear the Debtor in Possession designation and the lead case number for these cases.

5. To the extent permitted under applicable law, the terms and provisions of this Stipulation and Order shall be binding upon the Debtors and their successors and assigns, including, but not limited to, any trustee appointed in these cases, in any superseding case or in any case related hereto, and shall survive to the benefit of the Bank and the Debtors.

6. The automatic stay imposed by Section 362 of the Bankruptcy Code shall be, and hereby is, lifted and vacated to the extent necessary, if any, to implement and effectuate the terms and conditions of this Stipulation and Order.

7. The Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to this Stipulation and Order.

8. Each person who executes this Stipulation and Order on behalf of a party hereto represents that he is duly authorized to execute this Stipulation and Order on behalf of such party.

9. This Stipulation and Order may be executed and delivered by electronic mail or facsimile in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

10. Any actions taken pursuant thereto, shall be effective immediately upon entry of this Stipulation and Order pursuant to Bankruptcy Rules 6004(h) and 7062.

11. If this Stipulation and Order is not approved by the Bankruptcy Court, it shall be deemed null and void and shall not be referred to or used for any purpose by any of the parties hereto or any of the other parties in the Debtors' chapter 11 cases.

Respectfully submitted:

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.


By: /s/ Daniel Fiorillo_____
    Daniel F. Fiorillo
    230 Park Avenue
    New York, NY 10169
    (212) 661-9100, ext. 314

*Proposed Special Counsel for the Debtors and Debtors-in-Possession*

MAYER BROWN LLP


By: /s/ Frederick Hyman_____
    Frederick Hyman
    1675 Broadway
    New York, New York 10019
    Telephone: 212.506.2500
    Facsimile: 212.262.1910

*Attorneys for JPMorgan Chase Bank, N.A.*

SO ORDERED:

Dated: **December 18, 2008**
      New York, New York

                /s/Martin Glenn_____
              UNITED STATES BANKRUPTCY JUDGE