| UNITED STATES BANKRUPTCY COURT | FOR PUBLICATION |
| SOUTHERN DISTRICT OF NEW YORK | |

------------------------------------------------------------x
                                                     :

In re:                                       :         Chapter 11
                                                     :

BH S&B HOLDINGS LLC, *et al.*,         :         Case No. 08-14604 (MG)
                                                     :

                                         Debtors.    :
                                                     :
------------------------------------------------------------x

## OPINION & ORDER SUSTAINING DEBTORS' AND COMMITTEE OF UNSECURED CREDITORS' OBJECTIONS TO PROOF OF CLAIM NOS. 580 AND 581

*A P P E A R A N C E S:*

CAHILL, GORDON & REINDEL LLP
*Attorneys for the Debtors and Debtors-in-Possession*
80 Pine Street
New York, NY 10005
By:    Joel H. Levitin, Esq.
         Kevin J. Burke, Esq.

ARENT FOX LLP
*Attorneys for the Official Committee of Unsecured Creditors*
1675 Broadway
New York, NY 10019
By:    Robert M. Hirsch, Esq.

MATALON SHWEKY ELMAN PLLC
*Attorneys for Thor Macomb Mall LLC and Thor Eastpoint Mall LLC*
450 Seventh Avenue, Suite 1409
New York, NY 10123
By:    Barbara R. Shweky, Esq.


**MARTIN GLENN**
United States Bankruptcy Judge

        Before the Court are the objections ("Objections") of the debtors and debtors-in-

possession (collectively, the "Debtors") and the official committee of unsecured creditors

(the "Committee") (collectively, with the Debtors, "Objectors") to Proofs of Claim Nos.

1

580 and 581, filed by Thor Macomb Mall LLC and Thor Eastpoint Mall LLC (collectively, the "Thor Entities"). Proofs of Claim Nos. 580 and 581 seek administrative expense status for payments due upon the termination of two leases under which the Thor Entities are the landlords, as well as for rent, maintenance, real estate taxes and utility charges allegedly incurred after November 19, 2008 (the "Petition Date"). The only issue currently before the Court is whether the Thor Entities are entitled to administrative expense status for the payments due upon the termination of the two leases. For the reasons explained below, the Court sustains the Objections, and reclassifies the amounts of the payments due upon the termination of the two leases as general unsecured claims.

## BACKGROUND

In August 2008, BHS&B Holdings, LLC ("Debtor"), one of the Debtors in this case, purchased the assets of Steve & Barry's Michigan LLC and Steve & Barry's Maryland LLC (collectively, "Steve & Barry's Entities") as part of a sale under 11 U.S.C. § 363.[1] (Case No. 08-12579, ECF No. 628.) As part of the sale, the Debtor assumed certain non-residential real property leases, including the Steve & Barry's Entities' leases with the Thor Entities ("Leases"). *Id.* Prior to the assignment of the Leases, Steve & Barry's Michigan LLC owed $68,030.73 in back rent to Thor Macomb Mall LLC. (Resp. of Thor Macomb Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 580 ¶ 3.) Steve & Barry's Maryland LLC owed Thor Eastpoint Mall LLC $82,080.50 in back rent prior to the assignment of the Leases. (Resp. of Thor Eastpoint Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 581 ¶ 3.)

---

[1] To the extent the facts are taken from the parties' moving papers, they do not reflect any factual findings of the Court.

To facilitate the assumption of the Leases, the Thor Entities entered into Lease Modification and Landlord Consent Agreements with the Debtors. Under the Landlord Consent Agreements, Thor Macomb Mall LLC agreed to reduce unpaid rent owed by Steve & Barry's Michigan LLC to $15,666.67 (the "Macomb Deferred Payment") (Resp. of Thor Macomb Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 580 ¶ 3), and Thor Eastpoint Mall LLC agreed to reduce unpaid rent owed to Steve & Barry's Maryland LLC to $47,375.00 (the "Eastpoint Deferred Payment") (Resp. of Thor Eastpoint Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 581 ¶ 3). Both Deferred Payments would only become due "on the expiration or earlier termination" of the Leases. (Resp. of Thor Macomb Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 580 ¶ 3, Ex. A; Resp. of Thor Eastpoint Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 581 ¶ 3, Ex. A.)

The Debtors filed for chapter 11 relief on November 19, 2008. (ECF No. 1.) On January 16, 2009, the Debtors rejected the Leases. (*See* ECF Nos. 197, 237.) The parties agree that the rejections triggered the obligations to make the Deferred Payments under the Leases. (*See* Resp. of Thor Macomb Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 580 ¶ 4; Resp. of Thor Eastpoint Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 581 ¶ 4; Debtors' and Committee's Reply in Further Supp. of the Debtors' and Committee's Joint Objection to Proof of Claim No. 580 ¶ 21; Debtors' and Committee's Reply in Further Supp. of the Debtors' and Committee's Joint Objection to Proof of Claim No. 580 ¶ 21.)

On March 27, 2009, both Thor Entities filed their Proofs of Claim. Proof of Claim No. 580 seeks administrative expenses of $25,441.24, supposedly consisting of (i) $15,666.67 for the Macomb Deferred Payment; (ii) $ 1,834.03 for postpetition rent; and (iii) $7,940.54 for postpetition electric utility charges. Proof of Claim No. 581 seeks administrative expenses of $55,738.83, supposedly consisting of (i) $47,375.00, for the Eastpoint Deferred Payment; (ii) $5,545.98 for postpetition rent; (iii) $ 1,341.66, for common area maintenance charges accruing postpetition; (iv) $ 1,274.59 for real estate taxes accruing postpetition and (v) $201.60, for postpetition water and sewer utility charges.[2]

The Objections were filed on November 13, 2009. (ECF Nos. 592, 593.) The Thor Entities responded to the Objections on December 11, 2009. (ECF Nos. 627, 628.) On March 11, 2010, the Debtors and the Committee filed replies to the Thor Entities' responses. (ECF Nos. 682 and 683.) The Court held a hearing on the Objections on March 17, 2010 ("Hearing").

---

[2] The Objectors also originally objected to Proofs of Claim Nos. 580 and 581 on the grounds that they were untimely because they were stamped received by the Debtors' claims agent, Kurtzman Carlson Consultants LLC ("KCC"), on April 3, 2009, four days after the March 30, 2009 bar date in these cases. (*See* Debtors' and Committee's Reply in Further Supp. of the Debtors' and Committee's Joint Objection to Proof of Claim No. 580 ¶ 13; Debtors' and Committee's Reply in Further Supp. of the Debtors' and Committee's Joint Objection to Proof of Claim No. 580 ¶ 13.) The Order Establishing Deadline for Filing Proofs of Claim and Administrative Expense Claims in these cases provided that all non-governmental Proofs of Claim must be "received on or before the applicable Bar Date by the official noticing and claims agent in the Debtors' Chapter 11 cases, Kurtzman Carlson Consultants LLC." (*See* Order Establishing Deadline for Filing Proofs of Claim and Administrative Expense Claims, ECF # 334.) However, the claims register reflects filing dates of March 27, 2009, and, though the claims are stamped received by KCC on April 3, 2009, they are stamped received by the Bankruptcy Court on March 27, 2009, within the bar date. The Court deems Proofs of Claim Nos. 580 and 581 timely filed. FED. R. BANKR. P. 5005 permits the court "[i]n the interest of justice" to "order that a paper erroneously delivered" be "deemed filed with the clerk . . . as of the date of its original delivery." Courts have granted similar relief in the past. *In re Access Cardiosystems, Inc.*, 361 B.R. 626, 638-39 (Bankr. D. Mass. 2007) ("Regarding the failure to file the proofs of claim with KCC, this Court also finds that procedural error to be of little or no import and insufficient to render the Claims invalid. As the [creditors] have noted, although they failed to file their Claims with KCC, they did indeed *timely* file the proofs of claim [with the clerk of the Bankruptcy Court].") (emphasis in original); *Wilson v. Valley Elec. Membership Corp.*, 141 B.R. 309, 312 (E.D. La. 1992) (finding claim timely filed where erroneously filed with the Bankruptcy Court clerk instead of the District Court clerk as instructed by the relevant Notice of Bar Date to File Proofs of Claim).

On the record at the Hearing, Thor Macomb Mall LLC indicated it had withdrawn its Proof of Claim with respect to the $1,834.03 rent claim, conceding that the Debtors have already paid that amount. (*See also* Resp. of Thor Macomb Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 580 ¶ 5 n.1.) The Debtors in turn conceded that electric utility charges of $7,940.54 were entitled to administrative priority assuming the Proof of Claim was timely filed. Similarly, Thor Eastpoint Mall LLC indicated it had withdrawn its Proof of Claim with respect to $5,545.98 in rent previously paid, and the Debtors did not dispute that postpetition common area maintenance charges, real estate taxes, and water and sewer charges totaling $2,817.85 are entitled to administrative priority. (*See also* Resp. of Thor Eastpoint Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 581 ¶ 5 n.1.) Accordingly, the only issue before the Court is whether to reclassify the Deferred Payments as general unsecured claims. For the reasons explained below, the Court reduces Proofs of Claim Nos. 580 and 581 by the amount of the postpetition rent payments ($1,834.03 and $5,545.98, respectively), and reclassifies the amounts of the Macomb and Eastpoint Deferred Payments as general unsecured claims, permitting administrative claims of $7,940.54 for Proof of Claim No. 580 and $ 2,817.85 for Proof of Claim No. 581.

## DISCUSSION

Sections 365 and 503 are mutually exclusive provisions of the Bankruptcy Code granting administrative priorities. *E.g.*, *In re BH S&B Holdings LLC*, 401 B.R. 96, 100, 103-04 (Bankr. S.D.N.Y. 2009) (citing 3 COLLIER ON BANKRUPTCY ¶ 365.04[3][g] (15th ed. rev. 2005)). The Thor Entities only seek administrative priority for the Deferred Payments under section 503(b)(1)(A); however, section 365 may also apply here. (*See*

Resp. of Thor Macomb Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 580 ¶ 2; Resp. of Thor Eastpoint Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 581 ¶ 2; Debtors' and Committee's Reply in Further Supp. of the Debtors' and Committee's Joint Objection to Proof of Claim No. 580 ¶ 21, 23; Debtors' and Committee's Reply in Further Supp. of the Debtors' and Committee's Joint Objection to Proof of Claim No. 580 ¶ 21, 23.)  Section 365 provides for administrative priority for expenses incurred in performing obligations on a nonresidential lease of real property postpetition while the debtor-in-possession decides whether to assume or reject a lease, and general unsecured status for claims arising out of any rejection.  Section 503(b)(1)(A), in turn, grants administrative priority to expenses that are "actual [and] necessary" to preserve the estate.  An expense is "actual [and] necessary" if it "(1) arise[s] out of a postpetition transaction between the creditor and the . . . debtor . . . and (2) . . . the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor's estate in the operation of its business." *In re A.C.F. Elevator Co., Inc.*, 347 B.R. 473, 480 (Bankr. S.D.N.Y. 2006) (internal quotation marks and citations omitted).  If section 365 applies to the Deferred Payments, section 503(b)(1)(A) does not.  *E.g.*, *In re BH S&B Holdings LLC*, 401 B.R. at 100, 103-04 (citing 3 COLLIER ON BANKRUPTCY ¶ 365.04[3][g]); *see also In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 69 (Bankr. S.D.N.Y. 2004) ("*Ames*") (quoting *In re Handy Andy Home Improvement Ctrs., Inc.* 144 F.3d 1125, 1128 (7th Cir. 1998) ("*Handy Andy*") ("To give relief to landlords, Congress passed section 365(d)(3), which takes them out from under the 'actual, necessary' provision of 503(b)(1) and allows them during that awkward

postpetition prerejection period to collect the rent fixed in the lease.").[3] The Court addresses each section in turn.

## A. Section 365 Establishes Priorities for Treatment of Expenses

Section 365 of the Bankruptcy Code permits a debtor-in-possession to "assume or reject any executory contract or unexpired lease of the debtor," and provides for different priorities for expenses incurred prior to and as a result of rejection of a contract or unexpired lease. Arguably, section 365 applies to the Landlord Consent Agreements because they are part and parcel of the Leases. The Landlord Consent Agreements refer to the Leases, and provide that "[a]ll other terms and conditions of the Lease[s] shall remain and continue in full force and effect and shall be deemed unchanged except to the extent provided herein." (Resp. of Thor Macomb Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 580 Ex. A; Resp. of Thor Eastpoint Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 581 Ex. A.) The Objectors contend that "[t]he contractual provision[s] that established liability for the [Deferred Payments] w[ere] part of [Leases] that the Debtors rejected in the exercise of their sound business judgment and pursuant to the Court's express approval." (Debtors' and Committee's Reply in Further Supp. of the Debtors' and Committee's Joint Objection to Proof of Claim No. 580 ¶ 21; Debtors' and Committee's Reply in Further Supp. of the Debtors' and Committee's Joint Objection to Proof of Claim No. 581 ¶ 21).

---

[3] In *Ames*, Judge Gerber analyzed a landlord's demand for cleanup costs as an administrative expense under both section 503(b)(1) and, separately, under section 365(d)(3). *Ames*, 306 B.R. at 55. In doing so, "the Court assume[d], without deciding, that section 365(d)(3) gives rise to a right to an administrative expense claim or payment of an administrative expense (even though it does not say so), and not just to an entitlement to an order requiring the debtor to comply with its post-petition lease obligations before rejection . . . ." *Id.* at 58. Judge Gerber relied on *In re Nat'l Refractories & Minerals Corp.*, 297 B.R. 614, 619 (N.D. Cal. 2003), which did not apply the section 503(b)(1) analysis to a section 365(d)(3) claim.

7

Bankruptcy Code §§ 365(g)(1) and 365(d)(3) establish different priorities for claims arising out of and prior to the rejection of nonresidential leases of real property under section 365(a). First, under section 365(g)(1), the rejection of an unexpired lease "constitutes a breach of such . . . lease – if such . . . lease has not been assumed under this section . . . immediately before the date of the filing of the petition." "Thus, any damage claim for breach of a rejected lease is a general, unsecured claim." *In re Nat'l Refractories & Minerals Corp.*, 297 B.R. at 617 (citing 11 U.S.C. § 365(g)(1)).

However, between the filing of a bankruptcy petition and a debtor-in-possession's decision whether to assume or reject an unexpired lease, section 365(d)(3) requires a debtor-in-possession to "timely perform all the obligations of the debtor . . . notwithstanding section 503(b)(1) of this title." Expenses arising out of this performance are entitled to automatic administrative expense status. *E.g.*, *In re BH S&B Holdings LLC*, 401 B.R. at 100, 103-04 (citing 3 COLLIER ON BANKRUPTCY ¶ 365.04[3][g]).

In determining whether a claim is an expense that arises out of the timely performance of the debtor's obligations post-petition and pre-rejection under 11 U.S.C. § 365(d)(3), or arises out of rejection under 11 U.S.C. § 365(g)(1), courts examine when the "obligation" was incurred. *See In re BH S&B Holdings LLC*, 401 B.R. at 105. Obligations for payments that are contingent on other events occurring are incurred when the contingency is triggered. This differs from when the landlord would have a claim, as the contingency could be triggered "long before [a] tenant has an *obligation* to do anything about [the contingency]." *Id.* at 105 (emphasis in original). In other words, "[t]he plain language of 365(d)(3) . . . applies whenever the obligation to perform 'arises,' not when it matures into a cause of action." *Id.* at 102.

Courts have found that damages triggered by the "termination" of leases do not arise pre-rejection, and, thus, are not obligations under section 365(d)(3), but arise upon rejection, and are general unsecured claims under section 365(g)(1). For example, in *Ames*, one of the subject leases required the tenant, *inter alia*, "[a]t the termination of this Lease to remove such of the Tenant's goods and effects as are not permanently affixed to the Leased Premises; [and] to repair any damage caused by such removal . . . ." *Ames*, 306 B.R. at 58. The court found that the costs of repairing any damage caused by the removal of the goods and effects were not entitled to administrative expense priority:

> the removal/repair obligations that were breached here—which were contractual—arose at the *termination* of the lease. The obligations were not continuing ones, such as the duty to pay monthly rent, that had to be satisfied on an ongoing basis before lease termination, as a condition to securing present and future benefits of tenancy. . . . If, prior to rejection and lease termination, the Landlords had thought about seeking payment of the cleanup expenses as an unsatisfied obligation under section 365(d)(3), there then would have been nothing to ask for. . . . This is quite a different issue, of course, from whether the Landlords would have a *claim* for cleanup expenses, in the event of a failure to perform. Under section 101(5) of the Code, claims are much more broadly defined, and include rights to payment that are unmatured or contingent.

*Id.* at 59 & n.53 (emphasis in original). The *Ames* court continued, finding that "[l]andlords' clean up claims also must be treated as pre-petition expenses by reason of section 365(g) and 502(g) of the Code . . . . [S]ections 365(g) and 502(g) provide, unambiguously, that rejection claims are pre-petition claims. And the claims in question here are plainly a species of rejection claims; like contractual claims for the rent that would be paid after rejection, these are contractual claims for the damages that the Landlords suffered after (and upon) the Debtor's rejection and removal from the premises." *Id.* at 59-60 (internal citations omitted). Furthermore, the court found if it

9

were to "hold that these cleanup costs are post-petition obligations, such a holding would be inconsistent with the doctrinal underpinnings under which motions to reject burdensome obligations are made, and would eviscerate the provisions of the Code that enable estates to relieve themselves of post-petition obligations under burdensome executory contracts." *Id.* at 60 (internal citations omitted).

Similarly, *In re National Refractories & Minerals Corp.*, 297 B.R. at 619, the court found cleanup costs due upon termination would only be entitled to administrative priority if they were incurred as a result of a breach during the postpetition, prerejection period. "If the Lease had been terminated just prior to the filing of the bankruptcy petition, the Debtor's liability for the Repair Costs would have been no different than those asserted in the Motion. Thus, to treat them as administrative claims would be contrary to the 'real world situation to which the language [of 11 U.S.C. § 365(d)(3)] pertains.'" *Id.* at 620 (quoting *Handy Andy*, 144 F.3d at 1128); *see also Prado, L.P. v. Rhodes, Inc. (In re Rhodes, Inc.)*, 321 B.R. 80, 89 (Bankr. N.D. Ga. 2005) ("*Rhodes*") (concluding that "to give proper weight to the bargain the parties made," "for purposes of section 365(d)(3), an obligation to pay rent, taxes or some other expense under an unexpired lease arises at the time that the tenant's liability on that obligation becomes fixed in an amount unalterable by subsequent events, such as the termination of the lease"); *Speciner v. Gettinger Assoc. (In re Brooklyn Overall Co., Inc.)*, 57 B.R. 999, 1003 n.3 (Bankr. E.D.N.Y. 1986) (concluding that "any claims for breach of contract

arising out of the termination will be treated as a pre-petition claim with no special priority") (citing *NLRB v. Bildisco*, 465 U.S. 513, 531 (1984)).[4]

Under the terms of the Landlord Consent Agreements, the obligations to pay the Macomb and Eastpoint Deferred Payments, like the payments in *Ames*, *National Refractories and Minerals Corp.*, and *Rhodes*, were triggered upon "expiration and early termination of the Lease[s]," which, according to both the Thor Entities and the Debtors, occurred at rejection.[5] Accordingly, assuming the Landlord Consent Agreements were part of the Leases, and 11 U.S.C. § 365(d)(3) applies, the Macomb and Eastpoint Deferred Payments are not entitled to administrative expense priority.

---

[4] While the Court believes that the language of section 365(d)(3) is clear, and does not require any additional tools for interpretation, the legislative history of section 365(d)(3) also supports these holdings. When it was added to the Bankruptcy Code in 1984, Senator Hatch commented:

> [D]uring the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area charges which are paid by all tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charges which are paid by all tenants according to the amount of space they lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

H.R. CONF. REP. NO. 98-882, at 598-99 (1984), *reprinted in* 1984 U.S.C.C.A.N. 576, 599. As indicated by the court in *Ames*, "365(d)(3) . . . allows [landlords] during that awkward postpetition prerejection period to collect the rent fixed in the lease. There is no indication that Congress meant to go any further than to provide a landlord exception to 503(b)(1), and thus no indication that it meant to give landlords favored treatment for any class of prepetition debts." *Ames*, 306 B.R. at 69 (quoting *Handy Andy*, 144 F.3d at 1128).

[5] Courts in the Second Circuit distinguish between "termination" and "rejection" of a lease or a contract. *E.g.*, *In re Enron Corp.*, 01-B-16034 (AJG), 2005 WL 3874285, *3 (Bankr. S.D.N.Y. Oct. 5, 2005) (citing *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne),* 114 F.3d 379, 386-87 (2d Cir. 1997)) (observing that "while rejection is treated as a breach that qualifies for a remedy, such breach is not a complete termination of the contract"); *In re Yasin,* 179 B.R. 43, 50 (Bankr. S.D.N.Y. 1995) (concluding that because "rejection constitutes a statutory breach, but does not repudiate or terminate the [contract,] [t]he parties must . . . resort to state law to determine their rights as a result of the breach") (internal citation omitted). Here, however, the Thor Entities do not appear to dispute that the rejection of the Leases triggered the need to pay the Macomb and Eastpoint Deferred Payments. (Resp. of Thor Macomb Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 580 ¶ 4; Resp. of Thor Eastpoint Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 581 ¶ 4.)

## B. Section 503(b)(1)(A) Limits Administrative Expenses to the Actual, Necessary Costs and Expenses of Preserving the Estate

Even if the Landlord Consent Agreements were separate from the Leases, and thus not subject to section 365(d)(3), the Macomb and Eastpoint Deferred Payments would not qualify for administrative expense treatment under section 503(b)(1)(A). As noted above, section 503(b) permits "allowed, administrative expenses" that involve the "actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1)(A). Priority status pursuant to section 503(b)(1)(A) "should be narrowly construed to maximize the value of the estate for all creditors." 4 COLLIER ON BANKRUPTCY ¶ 503.06[2]; *see Ames*, 306 B.R. at 54 (citing *Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986)) (concluding that "grants of administrative expense priority cut against the general goal in bankruptcy law to distribute limited debtor assets equally among similarly situated creditors").

A claim must meet two requirements under section 503(b)(1)(A): (1) it must "arise out of a postpetition transaction between the creditor and the . . . debtor . . . and (2) be allowable only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor's estate in the operation of its business." *In re A.C.F. Elevator Co., Inc.*, 347 B.R. at 480 (internal quotation marks and citations omitted). In *In re Old Carco LLC*, 09-B-50002 (AJG), 2010 WL 22520 (Bankr. S.D.N.Y. Jan. 5, 2010), Judge Gonzalez elaborated on these requirements:

> [t]he services performed by the claimant must have been 'induced' by the debtor-in-possession, not the pre-petition debtor. Considering inducement by the debtor-in-possession to be a crucial element comports with the policy reason for allowing the priority, which is to encourage third parties to supply the debtor-in-possession with goods and services with the goal of achieving a reorganization to benefit all creditors. Thus, benefit to the debtor-

> in-possession alone, without its having induced the performance, is not sufficient to warrant entitlement to an administrative claim priority, as it would contradict this policy reason for allowing the priority.

*Id.* at *7 (citing *In re Jartan, Inc.*, 732 F.2d 584, 587, 588, 590 (7th Cir. 1984)). In *In re Jartan, Inc.*, 732 F.2d at 588, the court refused to grant administrative priority to fees for telephone-book advertising that were irrevocably incurred prior to the petition date, but which were published only after the bankruptcy case commenced because "administrative priority is granted to post-petition expenses so that third parties will be moved to provide the goods and services necessary for a successful reorganization. In the case before us, no inducement by the debtor-in-possession was required because the liability for the costs of the ads was irrevocably incurred before the petition was filed." (citation omitted).

The Thor Entities contend the Debtors obligations to pay the Deferred Payments were triggered—but not rejected—when the Debtors rejected the Leases. Thus the Deferred Payments are postpetition obligations. The Thor Entities cite to *Kwik-Kopy Corp. v. Klein (In re Klein)*, 218 B.R. 787 (Bankr. W.D. Pa. 1998) ("*Kwik-Kopy*"), in support of their position. The court in *Kwik-Kopy* applied section 503(b)(1) to find that a covenant not to compete was not rejected when it was part of a rejected executory contract, and, thus "[t]he obligation to pay royalties for breach of the covenant is a postpetition, actual and necessary expense to preserve the estate." *Id.* at 795. The court made an exception to the normal rule that an executory contract could not be rejected in part because the "very purpose of the covenant is to govern the parties *after* the demise of the underlying contract, even though the covenant is not an executory contract in and of itself." *Id.* at 790 (emphasis in original). There is nothing analogous in this case that would lead the Court to separate the obligations to make the Deferred Payments from the

13

other obligations under the Landlord Consent Agreements. The Macomb and Eastpoint Deferred Payments were not ongoing post-rejection; they were due "in full on the expiration date or early termination date of the Lease(s)." (Resp. of Thor Macomb Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 580 Ex. A; Resp. of Thor Eastpoint Mall LLC to Debtors' and Committee's Joint Objection to Proof of Claim No. 581 Ex. A.) Damages arising from a covenant not to compete could arise long after a contract was rejected.[6] There is nothing in the Leases that demonstrates the clauses providing for the Deferred Payments were intended to govern the parties or their relationship after they were no longer in a landlord-tenant relationship.

Furthermore, under the first prong of the section 503(b)(1) test set forth in *A.C.F. Elevator Corp.*, 347 B.R. at 480, the Debtors' obligations to pay the Deferred Payments did not arise out of a postpetition transaction between the creditor and the debtor and were induced by the prepetition debtor. *See also In re Old Carco LLC*, 2010 WL 22520, at *7. Instead, the Deferred Payments were imposed solely for the benefit of the pre-petition debtors to be able to enter into the Leases with the Thor Entities.

Nor was the consideration supporting the claimant's right to payment "supplied to and beneficial to the debtor's estate in the operation of its business" under section 503(b)(1). Imposing administrative expense priority for the Deferred Payments would only harm the Debtors by requiring a large payout at the expense of other creditors, for which the Debtors received no benefit during the postpetition period. Accordingly, the Deferred Payments are not administrative expenses under section 503(b)(1).

## CONCLUSION

---

[6] As noted *supra* n.5, the Thor Entities do not appear to dispute that the date of the contract rejection was the date on which the Macomb and Eastpoint Deferred Payments became due, regardless of the fact that rejection does not result in a complete termination of a contract for all purposes.

14

Accordingly, under section 365(d)(3), or, alternatively, under section 503(b)(1), the Court **REDUCES** the Thor Macomb Administrative Claim, Proof of Claim No. 580, to $7,940.54 (postpetition electric utility charges) because the $1,834.03 claimed as postpetition rent has been paid and satisfied. Furthermore, the Court **RECLASSIFIES** the $15,666.67 amounting to the Macomb Deferred Payment as a general unsecured claim. Similarly, with respect to Proof of Claim No. No. 581, under section 365(d)(3), or, alternatively, under section 503(b)(1), the Court **REDUCES** the Thor Eastpoint Administrative Claim to $2,817.85 (common area maintenance charges, real estate taxes and water and sewer utility charges accruing postpetition) because the $5,545.98 claimed as postpetition rent has been paid and satisfied. The Court **RECLASSIFIES** the $47,375.00 owed for the Eastpoint Deferred Payment as a general unsecured claim.

**IT IS SO ORDERED.**

DATED:    April 7, 2010
              New York, New York

                                        /s/ *Martin Glenn*
                                        MARTIN GLENN
                                 United States Bankruptcy Judge