UNITED STATES BANKRUPTCY COURT       **FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| BH S&B HOLDINGS LLC, *et al.*, | : | Case No. 08-14604 (MG) |
|  | : |  |
| Debtors. | : |  |
|  | : |  |

-----------------------------------------------------------x

**MEMORANDUM OPINION & ORDER SUSTAINING DEBTORS' AND
COMMITTEE OF UNSECURED CREDITORS' OBJECTIONS TO PROOF OF
CLAIM NOS. 675, 676 AND 677**

*A P P E A R A N C E S :*

CAHILL, GORDON & REINDEL LLP
*Attorneys for the Debtors and Debtors-in-Possession*
80 Pine Street
New York, NY 10005
By:    Kevin J. Burke, Esq.
        Peter J. Linkin, Esq.

ARENT FOX LLP
*Attorneys for the Official Committee of Unsecured Creditors*
1675 Broadway
New York, NY 10019
By:    Robert M. Hirsch, Esq.

LINEBARGER GOGGAN BLAIR & SAMPSON LLP
*Attorneys for Dallas County, Tarrant County and Irving ISD*
2323 Bryant St. #1600
Dallas, TX 75201
By:    Elizabeth Weller, Esq.

**MARTIN GLENN**
United States Bankruptcy Judge

       In July 2008, the debtors and debtors-in-possession (collectively, the "Debtors")

purchased the Steve & Barry's women's clothing business in a chapter 11, section 363

sale.  By November 2008, the Debtors had filed their own bankruptcy cases, and by

January 2009, had closed the remaining 153 Steve & Barry's stores they hoped to

maintain in the July 2008 purchase.  Before the Court is the objection ("Objection") of

the Debtors and the official committee of unsecured creditors (the "Committee")

(collectively, with the Debtors, "Objectors") to Proofs of Claim Nos. 675, 676 and 677

("Tax Claims"), filed by three local Texas taxing authorities, Dallas County, Tarrant

County and Irving ISD (collectively, the "Tax Authorities").[1]  Proofs of Claim Nos. 675,

676 and 677 are requests for payment of administrative expenses pursuant to section

503(b) of the Bankruptcy Code.  Specifically, they seek to recover *ad valorem* taxes for

the 2009 tax year on the Debtors' property located at five of the stores closed by order of

the Court in mid-January 2009.

 The Objectors seek to disallow the claims as untimely pursuant to the Court's

February 11, 2009 Order establishing a bar date for administrative claims

("Administrative Bar Date Order").  (ECF # 334.)  The Objection was filed on May 28,

2010.  (ECF # 751.)  The Tax Authorities responded to the Objection on June 22, 2010.

(ECF # 761.)  On June 28, 2010, the Objectors filed a reply to the Tax Authorities'

response.  (ECF # 767.)  The Court held a hearing on the Objection on June 29, 2010

("Hearing"), and took the matter under submission.

 For the reasons explained below, the Court sustains the Objections, and disallows

the Tax Claims as untimely.

---

[1]  The Objectors objected to the Tax Claims as part of their Fourth Omnibus Objection to
Administrative Claims.  (ECF # 751.)  The Objection with respect to the remainder of the claims listed in
the Fourth Omnibus Objection to Administrative Claims was sustained by a separate order dated July 7,
2010.  (ECF # 782.)

# I  BACKGROUND

## A.    Proofs of Claim

Proofs of Claim Nos. 675, 676 and 677, filed by Tarrant County, Dallas County and Irving ISD, are for $59,676.89, $12,656.88 and $469.62, respectively, plus penalties and interest accruing pursuant to TEX. TAX CODE ANN. §§ 33.01 and 33.07 (2010).  Each Tax Claim is dated September 23, 2009.  The Debtors' claims and noticing agent, Kurtzman Carlson Consultants LLC ("KCC"), received them on October 5, 2009.  Each Tax Claim indicates that the respective debt was incurred on "January 1 of each tax year, pursuant to Sections 32.01 and 32.07 of the Texas Property Tax Code," and "Penalty and Interest continues to accrue."

Claim No. 675 is supported by three "Account Information" printouts for three store locations, dated September 23, 2009, listing 2008 taxes due from "Steve & Barrys Texas LLC."  Each printout contains a partially handwritten note providing that year 2009 estimated taxes are (a)"$32,885.63[,] [including] County $ 7,903.59, ISD $ 17,693.05 [and] City $7,288.99" (0003316 Denton Hwy #400); (b) $ 8,015.70 (0003000 Grapevine Mills # 125); and (c) "$18,775.56[,] [including] City $9,521.06 [and] County $9,254.50" (0003811 S Cooper St # 6004), totaling the amount of Claim No. 675, $59,676.89.  The three notes also provide that "[a]ctual tax amounts will be determined at a later date pursuant to Texas law."

Similarly, Claim No. 676 is supported by two "2008 Tax Statements" for two store locations dated September 18, 2009, addressed to "Steve & Barrys" and "Steve & Barrys University Spor," with partially handwritten notes providing "[e]stimated taxes for year 2009 are $174.35 [for 2416 Irving Mall, 40]," and "$12,482.53[for 3161

3

Broadway, CG]" and "[a]ctual tax amounts will be determined at a later date pursuant to

Texas law." These amounts total the amount of Claim No. 676, $12,656.88. "Account

Details" reflecting the same apparently estimated amounts due for 2009 are also attached.

Claim No. 677, however, is supported by a "Delinquent Tax Statement Summary"

for a store located at 2416 Irving Mall,[2] dated September 18, 2009, addressed to "Steve &

Barrys." The amount due on the "Delinquent Tax Statement Summary" is $469.62, the

total amount of Claim No. 677, and appears to be for the year 2009. However, the

"Delinquent Tax Statement Summary," like the documents attached to Claim Nos. 675

and 676, also contains a partially handwritten note providing that "[e]stimated taxes for

year 2009 are $469.62," and "[a]ctual tax amounts will be determined at a later date

pursuant to Texas law."

As the Debtors filed their chapter 11 petitions on November 19, 2008, the Tax

Claims are indisputably for postpetition taxes for the year 2009.

## B.    Abandonment and Going Out of Business Orders

On December 16, 2008, the Court entered an order authorizing the Debtors to

abandon certain assets, including all personal property remaining at "any Store or any of

the Debtors' other leased premises" subsequent to "the conclusion of a Store Closing Sale

or other store or facility closing at any time since the Petition Date" under section 554 of

the Bankruptcy Code. (ECF # 193, as amended ECF # 197) ("Abandonment Order").

On January 8, 2009, the Court ordered that "the Debtors shall cease their 'going-

out-of-business sales' no later than January 11, 2009, and shall exit any of their

remaining stores no later than January 16, 2009." Accordingly, the Debtors closed the

---

[2]      The Tax Authorities do not explain why property from the store located at 2416 Irving Mall is
taxed both by Dallas County and Irving ISD, but the Debtors do not appear to contest Claim Nos. 676 and
677 on that basis.

4

0003316 Denton Hwy #400, 0003000 Grapevine Mills # 125, 0003811 S Cooper St #

6004, 2416 Irving Mall, 40 and 3161 Broadway, CG stores that are referenced in the Tax

Claims ("Stores") no later than January 11, 2009, and exited the stores no later than

January 16, 2009.  (*See* Agreed Order Authorizing Debtors to Utilize Cash Collateral and

Granting Other Agreed-Upon Relief ("Going Out of Business Order") (ECF # 251 at 3).)

        The parties agree that the requests for payment were for *ad valorem* taxes

assessed on personal property located at the Debtors' stores.  However, the Objectors

argue that all property on which the taxes are assessed was abandoned under the

Abandonment Order.  (Objectors' Reply in Further Supp. of Objectors' Joint Fourth

Omnibus Obj. to Administrative Claims (Administrative Claims Not Timely Filed) As It

Relates to Administrative Claims 675, 676 and 677 ("Objectors' Reply") at ¶ 18.)  The

Tax Authorities contend that the Debtors did not "abandon all property" under the

Abandonment Order, since the Debtors were administering estate property by continuing

to sell inventory for the first half of January 2009, and thus the taxes were assessed on

more than property abandoned by the Abandonment Order.  (Tr. June 29, 2010 Hearing

(hereinafter, "Hr'g Tr.") 12:15-21 (ECF # 788).)

        C.    **Administrative Bar Date Order**

        On February 11, 2009, the Court entered an Order establishing a bar date for

administrative claims ("Administrative Bar Date Order").  (ECF # 334.)  The

Administrative Bar Date Order requires that KCC receive proofs of claim from claimants

asserting administrative claims no later than the later of: (i) March 30, 2009, at 5:00 PM

(Prevailing Eastern Time); and (ii) the date that is 30 days after the occurrence of the

event giving rise to a claim under section 503 of the Bankruptcy Code.[3]  (ECF # 334 at

3.)  Any claimant filing a late claim is "forever barred, estopped, and enjoined from

asserting such claim against the Debtors."[4]  (*Id*. at 5.)  No party, including the Tax

Authorities, objected to entry of the Administrative Bar Date Order.

   As noted above, each of the Tax Authorities' claims indicates that its respective

debt was incurred on "January 1 of each tax year [2009], pursuant to Sections 32.01 and

32.07 of the Texas Property Tax Code," and "Penalty and Interest continues to accrue."

(*See also* Resp. of Tax Authorities to Obj. at ¶ 1(ECF # 761) ("These claims accrued on

January 1, 2009, pursuant to Texas Property Tax Code §§ 32.01 and 32.07."); Hr'g Tr.

11:6-7 ("[On January 1] the lien attached and the personal liability.").)  The Tax

Authorities contend, however, that the Debtors did not file their 2009 tax returns, which

were due on April 15, 2009.  (Hr'g Tr. at 7:11-13.)

   The Tax Authorities also allege that "[w]hile the Debtor [*sic*] incurred these taxes

on January 1, 2009, the Tax Authorities did not set the tax rate and determine the amount

of the taxes until on or about October 1, 2009[,]" and "[u]ntil the amounts were on the tax

---

[3]    The Administrative Bar Date Order also set May 18, 2009 as the deadline for "governmental units (as defined in Bankruptcy Code § 101(27)) to file Proofs of Claim based on pre-petition claims (as defined in Bankruptcy Code § 101(5)) against the Debtors."  It is undisputed, however, that the Tax Claims are postpetition claims.  In any event, the Tax Claimants filed the Tax Claims long after May 18, 2009.

[4]    The Administrative Bar Date Order exempted "any person or entity whose claim is listed on the Schedules and (i) whose claim is not described as 'disputed,' 'contingent,' or 'unliquidated,' and (ii) that does not dispute the amount or nature of the claim set forth in the Schedules."  The Debtors' filed their Schedules on January 30, 2009, after the Tax Authorities' claims accrued.  Only Schedule E for BHS&B Retail LLC lists unsecured nonpriority claims.  Many of the claims listed on Schedule E appear to be for state and local taxes; however, at least on the face of Schedule E, there is no reference to taxes owed to Dallas County, Tarrant County, or Irving ISD.  (ECF # 309.)  Fed. R. Bankr. P. 1007 and 11 U.S.C. § 521 require that a debtor file "schedules of assets and liabilities" within fourteen days of the Petition Date. However, a Debtor is only required to schedule prepetition debt.  *E.g.*, *In re Estes*, 415 B.R. 568, 575 (Bankr. N.D. Ala. 2009) (determining "that section 521(a)(1)(B)(i) did not require this debtor to include any debts other than prepetition debts in her schedules").  Accordingly, the Debtors were not required to list the Tax Claims on their Schedules.

rolls, any claim filed would have only been an estimated amount." (Resp. of Tax Authorities to Obj. at ¶ 2 (ECF # 761).) Counsel for the Tax Authorities "attempted to call the stores in January," and with respect to closed stores, "chose not to file administrative expenses claims because [they] believe[d] [the Stores] might've been closed before January 1, and [they] were waiting to get the information for sure from the tax role [*sic*] from the appraisal district."[5] (Hr'g Tr. at 9:1-4.) Counsel also timely filed several claims on behalf of other local Texas tax authorities for *ad valorem* taxes on the Debtors' property. (Hr'g Tr. at 4:8-9; Objectors' Reply at ¶ 11 n.2.)

If the Tax Claims are subject to the Administrative Bar Date Order, which, as explained further below, the Court finds they are, the Tax Authorities needed to file proofs of claim either before March 30, 2009, or 30 days after the "occurrence of the event giving rise" to the liability, which the Court determines occurred on January 1, 2009. Thus, for the reasons explained below, the Court disallows the Tax Claims in their entirety as untimely filed.

---

[5]    The Tax Authorities admit that even at this juncture, "there may be questions on amount" due on the Tax Claims. Counsel stated on the record at the Hearing that the actual amounts due on the Tarrant and Dallas County claims are different ($24,378.06 and $14,586.02, respectively) than the amounts listed in Proofs of Claim Nos. 675 and 676. (Hr'g Tr. at 9:23-25; 10:3-5.) Section 505(a)(1) of the Bankruptcy Code permits the Court to "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction," except that the court may not, *inter alia,* determine "the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under any law (other than a bankruptcy law) has expired." Though not briefed by the parties, it appears under the TEX. TAX CODE ANN. § 41, the applicable period for contesting or redetermining the amount of the *ad valorem* taxes appears to have expired in 2009, and thus the Court cannot value the claims at this juncture. In any event, because, as explained below, the Court is disallowing the Tax Claims in their entirety, the valuation issue is moot.

## II  DISCUSSION

### A.    The Tax Claims Are Subject to the Administrative Bar Date Order

#### 1.    *The Tax Claims are Administrative Claims*

Section 503(b)(1)(B) of the Bankruptcy Code provides, in relevant part, that

"there shall be allowed, administrative expenses . . . including . . . (B) any tax–(i)

incurred by the estate, whether secured or unsecured, including property taxes for which

liability is in rem, in personam, or both, except a tax of a kind specified in section

507(a)(8) of this title."  The *ad valorem* taxes here are not any of the kind listed in section

507(a)(8) of the Bankruptcy Code.[6]  Accordingly, the *ad valorem* taxes for 2009 are

administrative expenses.

#### 2.    *The Tax Authorities Are Not Excused From Filing Requests for Payment of the Administrative Expenses Under 11 U.S.C. 503(b)(1)(D)*

Section 503(a) of the Bankruptcy Code permits an entity to "timely file a request

for payment of an administrative expense" or "tardily file such request if permitted by the

court for cause."  Section 503(b)(1)(D) of the Bankruptcy Code provides an exception to

the filing requirements of Section 503(a):  "notwithstanding the requirements of

subsection (a), a governmental unit shall not be required to file a request for the payment

of an expense described in subparagraph (B) . . . , as a condition of its being an allowed

---

[6]       Section 507(a)(8) applies to "(A) a tax on or measured by income or gross receipts for a taxable
year ending on or before the date of the filing of the petition [with certain limitations not applicable here];
(B) a property tax incurred before the commencement of the case and last payable without penalty after one
year before the date of the filing of the petition; (C) a tax required to be collected or withheld and for which
the debtor is liable in whatever capacity; (D) an employment tax on a wage, salary, or commission . . .
earned from the Debtor before the date of the filing of the petition, whether or not actually paid before such
date, for which a return is last due, under applicable law or any extension, after three years before the date
of the filing of the petition; (E) an excise tax on- (i) a transaction occurring before the date of the filing of
the petition for which a return, if required, is last due, under applicable law or under any extension, after
three years before the date of the filing of the petition; or (ii) if a return is not required, a transaction
occurring during the three years immediately preceding the date of the filing of the petition; (F) a customs
duty . . . ; (G) a penalty related to a claim of a kind specified in this paragraph and in compensation for
actual pecuniary loss."

administrative expense." This is because 28 U.S.C. § 960(b) requires debtors to pay most

taxes on or before when they are due under nonbankruptcy law while the bankruptcy case

is pending. Importantly, however, 28 U.S.C. § 960(b)(1) exempts a debtor from paying

"property tax secured by a lien against property that is abandoned under section 554 of

title 11, within a reasonable period of time after the lien attaches, by the trustee in a case

under title 11" on or before such a tax is due.[7]

Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing,

the trustee may abandon any property of the estate that is burdensome to the estate or that

is of inconsequential value and benefit to the estate." This "[a]bandonment divests the

bankruptcy estate of its interest in the property and revests ownership in any party . . .

with a possessory interest in it." 15 COLLIER ON BANKRUPTCY TX4.03[5] (15th ed. rev.

2010).[8]

---

[7]    Even if debtors do not have to pay taxes on property abandoned under section 554 on or before
they come due, the filing of a bankruptcy petition does not automatically stay the efforts of local taxing
authorities to create or perfect "a statutory lien for an ad valorem property tax . . . if such tax or assessment
comes due after the date of the filing of the petition." *See* 11 U.S.C. § 362(b)(18). Still, section 362 does
not permit the taxing authority to "take action to enforce the lien, which would deprive the estate of use and
possession of the property." 3 COLLIER ON BANKRUPTCY ¶ 362.05[17] (15th ed. rev. 2010).

[8]    Abandonment can be advantageous to the estate from a tax standpoint because "any tax liability
incurred by the bankruptcy estate as a result of [disposition of property of the estate and not abandonment,
such as by foreclosure] is an administrative expense of the estate [and not the party to which the property is
abandoned] if the property is abandoned to the debtor who then disposes of it, the debtor bears the burden
of the tax liability without the ability to discharge it in bankruptcy." *Id.* But under Texas state law,
"property taxes are the personal obligation of the person who owns or acquires the property on January 1 of
the year for which the tax is imposed . . . . A person is not relieved of the obligation because he no longer
owns the property." TEX. TAX CODE ANN. § 32.07 (2010). Section 502(b)(3) of the Bankruptcy Code
provides that property tax claims will not be allowed "to the extent the claim exceeds the value of the
interest of the estate in such property." Still, at least with respect to prepetition tax claims, courts will not
reduce the initial amount of a tax assessed on property where some of that property was sold prior to or
early in the bankruptcy; instead, the remaining personal property is encumbered by the amount of the
original tax lien, up to the full value of the remaining property. *In re Universal Seismic Assocs., Inc.*, 288
F.3d 205, 207 (5th Cir. 2002). In *In re Universal Seismic Associates, Inc.*, 288 F.3d at 207, the debtors
returned much of their personal property to secured creditors and lessors under agreements and as ordered
by the bankruptcy court, retaining only some vehicles and office furnishings valued approximately $20,000
lower than the total of certain Texas taxing authorities claimed due for *ad valorem* personal property taxes.
The court found that the remaining personal property remained encumbered by the tax lien, up to the full
value of the remaining property, and the underlying tax claim was not reduced by the value of property in

The question then turns on how claimants are to be paid for post-petition *ad valorem* taxes on property abandoned under section 554 of the Bankruptcy Code to the extent any taxes are due on the property.  The section 503(b)(1)(D) exception to the section 503(a) request for payment procedures came about as a result of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amendments to the Bankruptcy Code.  The 2005 Legislative History of section 960 after BAPCPA, however, clarifies that claimants for "property tax[es] secured by a lien against property

which the debtor no longer had an interest. *Id.*  Similarly, in *In re First Magnus Fin. Corp.*, 415 B.R. 416, 419, 427 (Bankr. D. Ariz. 2009), the court addressed whether a Liquidating Trustee would be liable for *ad valorem* personal property taxes on property that was abandoned in December 2007, the bankruptcy petition was filed in August 2007, and the debtor was the "responsible party for all of the personal property at issue," *id.* at 425, on January 1, 2007.  The Liquidating Trustee asserted that it was not liable for the 2007 taxes under section 502(b)(3) on personal property it abandoned by order of the court. *Id.*  The court pointed out that the underlying purpose of § 502(b)(3) is "to prevent the depletion of the debtor's estate by the payment of taxes assessed against property that has no value to the estate and is likely to be abandoned by the trustee" in order to "prevent injustice to unsecured creditors and prevent a windfall to . . . lienors who would unfairly benefit from the payment of property taxes that would otherwise remain charges on the property." *Id.* (quoting 4 COLLIER ON BANKRUPTCY ¶ 502.03[4][a], at 502-34 (15th ed. rev. 2008).  It determined that not all property subject to the taxes had been abandoned by the Debtor. *Id.*  Thus, the *In re First Magnus Fin. Corp.* court permitted the county taxing authority an allowed secured prepetition claim up to the lesser of its original claim or "the gross value of the tangible personal property remaining in the estate (other than the abandoned property) as of the petition date." *Id.* at 427.  However, applying *Universal Seismic*, it determined that the effect of section 502(b)(3) was not to eliminate any deficiency claim between the original secured tax claim and the value of the non-abandoned property, but instead render that deficiency claim a general unsecured claim and not a priority unsecured claim. *Id.* at 427-28 ("The effect of § 502(b)(3) is to eliminate all unsecured prepetition tax claims that might otherwise obtain priority under § 507(a)(8)(B).") (citing *In re Cummins*, 656 F.2d 1262, 1267 (9th Cir. 1981)).  Notably, the court permitted the tax authority to file an untimely proof of claim due to the debtor's failure to properly serve the tax authority with a bar date order, which is not at issue here. *Id.* at 423.

In the Objectors' motion papers, they merely argued that 28 U.S.C. § 960 required the Tax Claimants to file any claims for taxes on abandoned property in compliance with the Administrative Bar Date Order.  (Objectors' Reply at ¶ 16.)  At the Hearing, the Debtors took a more aggressive stance and alleged that no taxes were due on the abandoned property under section 960 of title 28.  (Hr'g Tr. at 6:11-14.)  The Court finds that to the extent the Debtors' personal property at the Stores was not abandoned on January 1, when the lien attached, the Tax Authorities would be entitled to a tax lien on the personal property up to the value of the non-abandoned personal property remaining in the bankruptcy estate, but the amount of the tax claim on January 1, 2009 was not later reduced by property abandoned by virtue of the Abandonment Order.  However, the court does not need to engage in any valuation or bifurcation of any secured and unsecured portion of the Tax Authorities' claims.  Modifications to the extent of the Tax Authorities' liens do not change that the event giving rise to the tax liability, regardless of whether the property was later abandoned, occurred on January 1, 2009; nor do they change that even if the Debtors had inventory on which the personal property taxes properly were assessed, as explained further *infra*, the section 503(d)(1)(B) exception which would otherwise not require a governmental unit to file a request for payment does not apply where an Administrative Bar Date Order is in effect.

that is abandoned under section 554 within a reasonable time after the lien attaches" may

not take advantage of the section 503(b)(1)(D) exception and must file a request for

administrative payments:

> Although current law generally requires trustees and receivers to pay taxes
> in the ordinary course of the debtor's business, the payment of
> administrative expenses must first be authorized by the court.  Section
> 712(a) of the [2005] Act amends section 960 of title 28 of the United
> States Code to clarify that postpetition taxes in the ordinary course of
> business must be paid on or before when such tax is due under applicable
> nonbankruptcy law, with certain exceptions.  This requirement does not
> apply if the obligation is a property tax secured by a lien against property
> that is abandoned under section 554 within a reasonable time after the lien
> attaches.

H.R. REP. NO. 109-31, pt. 1, at 102-03 (2005).  Here, some, if not all of the personal

property subject to the *ad valorem* taxes was abandoned under section 554 within fifteen

days of the tax liens attaching, which the Court finds is reasonable.  Therefore, the Tax

Authorities needed to file requests for payments in order to obtain payment of the *ad*

*valorem* taxes asserted in the Tax Claims to the extent the taxes were on property

abandoned pursuant to the Abandonment Order.

With respect to any *ad valorem* taxes due on any inventory that was sold and not

abandoned, the Tax Authorities conclusorily argue that inventory was not abandoned, but

sold; they have not provided a breakdown to the Court of amounts of the taxes

attributable to inventory, nor any evidence to demonstrate that the section 503(b)(1)(D)

exception would apply to any portion of the Tax Claims assessed on inventory existing

on January 1 that was allegedly later sold.  "[I]n the absence of modification expressed in

the Bankruptcy Code the burden of proof on a tax claim in bankruptcy remains where the

substantive tax law puts it."  *Raleigh v. Ill. Dept. of Revenue*, 530 U.S. 15, 26 (2000).

Specifically, "[i]n Texas, once a prima facie case of delinquent taxes is shown, the

burden shifts to the taxpayer to introduce competent evidence that he has paid the full amount of taxes, penalties and interest, or that there is some other defense that applies to his case. If the prima facie case is rebutted, then, under a legal sufficiency analysis, the fact-finder resolves matters of weight and credibility among the competing items of evidence." *In re First Magnus Fin. Corp.*, 415 B.R. at 423 (citing *Maximum Med. Imp., Inc. v. Cnty. of Dallas*, 272 S.W.3d 832, 835-36 (Tex. App. 2008)). However, as explained further below, the Tax Claimants bear the burden to demonstrate why a late-filing is appropriate. *See In re PT-1 Commc'ns, Inc.*, 403 B.R. 250, 260 (Bankr. E.D.N.Y. 2009) ("*PT-1*") (concluding that late filer bears burden of demonstrating excusable neglect). Were they prepetition claimants, they would also bear the burden of determining whether their claim is scheduled as disputed or contingent in determining whether it is necessary to comply with a bar date order. *In re Nutri*Bevco, Inc.*, 117 B.R. 771, 781 (Bankr. S.D.N.Y. 1990) (recognizing that creditor has "burden of determining the accuracy of scheduling claims" in determining whether filing proof of claim is necessary).

Thus, the Court finds that the Tax Claimants have the burden to demonstrate why the Administrative Bar Date Order should not apply to their claims and, if they cannot demonstrate that the Administrative Bar Date Order should not apply, why the date on which the events took place giving rise to the tax claims under the Administrative Bar Date Order should be pushed beyond the January 1, 2009 date on which they admit the claims were "incurred" in the Tax Claims. The Court agrees that the Tax Authorities have established a prima facie case of delinquent taxes. However, the Debtors contend, citing to the Abandonment Order, that all property was abandoned under the plain

12

language of the Abandonment Order. The Tax Authorities have not made any showing
that any property was instead sold as inventory and have not provided any breakdown of
such amounts in their original proofs of claim and did not provide such a breakdown at
the Hearing. In any event, as explained further below, giving the Tax Authorities another
opportunity to present evidence on this point would not change the Court's determination
that the Tax Claims should be disallowed—the Administrative Bar Date Order applies to
the Tax Claims, regardless of whether any portion of the personal property taxes were
assessed on inventory that was sold.

> 3.    *The Tax Authorities Needed to Comply With the Administrative*
> *Bar Date Order in Filing Their Requests for Payment*

Under FED. R. BANKR. P. 3003(c)(3), the Court is required to "fix" a date by
which chapter 11 proofs of claim must be filed. "Although there is no provision relating
to a bar date for requesting an administrative expense payment, courts may set such a
date pursuant to Bankruptcy Code § 105." *PT-1*, 403 B.R. at 259 (citing *In re Reams*
*Broad. Corp.,* 153 B.R. 520, 522 (Bankr. N.D. Ohio 1993)). The bar date "enabl[es] the
parties to a bankruptcy case to identify with reasonable promptness the identity of those
making claims against the bankruptcy estate and the general amount of the claims, a
necessary step in achieving the goal of successful reorganization." *Id.* (quoting *First*
*Fidelity Bank, N.A., N.J. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.),* 937 F.2d 833,
840 (2d Cir.1991)).[9] The Court set such a bar date here.

---

[9]    Other courts have required claimants seeking payment for claims incurred on property abandoned
to timely file requests for payments of taxes even prior to the amendments to section 960 of title 28. In *In*
*re Mailman Steam Carpet Cleaning, Inc.*, 270 B.R. 82, 84 (1st Cir. B.A.P. 2001), the debtor filed an
adversary complaint seeking to compel the chapter 7 trustee to pay all outstanding taxes on certain property
from that date the trustee was appointed until the date the court allowed the trustee to abandon its interest in
the property to the debtor. The court (though distinguishing a case in which the taxing authority itself made
a request for payment, as opposed to a beneficiary), noted that "Mailman sat on its hands (with 'no
reasonable explanation') for four years after abandonment before filing an adversary proceeding against the

Because the Tax Claimants have not demonstrated that all or even a portion of the Tax Claims exempted them from filing a request for payment under section 503(b)(1)(D), the Administrative Bar Date Order properly applies to the Tax Claims. Other courts have implied that Administrative Bar Date Orders can bind tax claimants to file administrative claims for postpetition personal property and other taxes despite the exception in 503(b)(1)(D) that governmental units are not otherwise required to file requests for payment of administrative expenses. *See PT-1*, 403 B.R. at 261; *In re Baltimore Marine Indus., Inc.*, 344 B.R. 407, 410-11 (Bankr. D. Md. 2006). In *PT-1*, the administrative bar date order specifically applied to "governmental units holding or wishing to assert a request for payment of an administrative expense." (Order Setting Last Day To File Administrative Proofs of Claim, *PT-1 Commc'ns, Inc.,* Case No. 1-01-12655-cec, (October 24, 2002) (ECF # 411).) However, in *In re Baltimore Marine Indus., Inc.*, 344 B.R. at 410-11, the administrative bar date order, which was embodied in the plan, applied generally to "any person or entity seeking the allowance or payment of an Administrative Expense Claim under § 503 of the Bankruptcy Code". Thus, the 503(b)(1)(D) exception does not apply where the court has entered an administrative bar date order applicable to governmental units. Here, the Administrative Bar Date Order applies generally to "all parties," with certain exceptions that do not include any taxing authorities. Accordingly, the Tax Authorities are required to comply with it regardless of section 503(b)(1)(D) of the Bankruptcy Code.

---

trustee. We do not believe such inaction complies with § 503(a)'s requirement that an entity seeking payment of an administrative expense '*timely* file' its request . . . [a]nd the record is devoid of any justification for Mailman's extended delay." (emphasis in original).

**B.      The Requests for Payment Should Have Been Filed the Later of within 30 days of January 1, 2009, or March 30, 2009, Even If They Were For Estimated or Unliquidated Amounts**

The Administrative Bar Date Order required that claims be filed on the later of (i) March 30, 2009, at 5:00 PM (Prevailing Eastern Time); and (ii) the date that is 30 days after the occurrence of the event giving rise to a claim under section 503 of the Bankruptcy Code.[10]  (ECF # 334 at 3.)  The Court finds that the event giving rise to liability to the Tax Claims took place on January 1, 2009.

*1.      The Liens Attached on January 1, 2009*

First, the Tax Authorities themselves point to TEX. TAX CODE ANN. §§ 32.01 and 32.07 in the Tax Claims.  TEX. TAX CODE ANN. § 32.01 (2010) provides that "[o]n January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property, whether or not the taxes are imposed in the year the lien attaches.  The lien exists in favor of each taxing unit having power to tax the property."  TEX. TAX CODE ANN. § 32.07 (2010) provides, in relevant part, that "[e]xcept as provided by Subsections (b) and (c) of this section, property taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is imposed or would have been imposed had property not been omitted as described under Section 25.21.  A person is not relieved of the obligation because he no longer owns the property."  Thus, as the Tax Authorities admit, the lien attached and became a personal obligation of the Debtors on January 1, 2009.

---

[10]      As noted *supra*, n.3, the Administrative Bar Date Order also set May 18, 2009 as the deadline for governmental units (as defined in Bankruptcy Code § 101(27)) to file Proofs of Claim based on pre-petition claims (as defined in Bankruptcy Code § 101(5)) against the Debtors; it is undisputed, however, that the Tax Claims are postpetition claims.

2.      *The Events Giving Rise to Liability Did Not Occur In September
         2009, when the Tax Authorities Received the Tax Rolls*

While the Tax Authorities argue that they needed to wait for the tax rolls to

determine whether the Stores closed prior to January 1, 2009 and thus whether any 2009

taxes would be due, this does not excuse their failure to file an "estimated" claim in

January 2009 in the event taxes were due, since they do not dispute that the lien attached

and the Debtors became personally liable on January 1, 2009.

Under the Texas Tax Code, the Tax Authorities could not have finally determined

the amount of the Tax Claims in January 2009, or even in September 2009 when they

filed the Tax Claims.  The partially handwritten notes on all three Tax Claims indicate

that the amounts due and owing are estimates.  TEX. TAX CODE ANN. § 26.01 (2010)

requires the chief appraiser to "prepare and certify to the assessor for each taxing unit"

the appraisal roll by July 25 of the given tax year.  By August 1 of the given year, or "as

soon thereafter as practical," TEX. TAX CODE ANN. § 26.04 (2010) requires the assessor

to "submit the appraisal roll for the unit showing the total appraised, assessed, and

taxable values of all property and the total taxable value of new property to the governing

body of the unit" and requires the taxing unit's collector to "certify an estimate of the

collection rate for the current year to the governing body."  TEX. TAX CODE ANN. § 26.09

(2010) provides that "[o]n receipt of notice of the tax rate for the current tax year, the

assessor for a taxing unit other than a county shall calculate the tax imposed on each

property included on the appraisal roll for the unit."  Lastly, TEX. TAX CODE ANN. §

31.01 (2010) requires the assessor to mail tax bills to each respective taxing unit by

October 1 of the given tax year.  However, there is no reason why the Tax Authorities

16

could not file an estimated amount when the liens attached and the Debtors became

personally liable in January 2009.

Tax claimants regularly file estimated claims in bankruptcy cases to comply with

bar date orders.  For example, in *Matter of O.P.M. Leasing Serv., Inc.*, 68 B.R. 979, 984

(Bankr. S.D.N.Y. 1987), the court determined that with respect to a prepetition tax claim,

"although the Debtor's exact tax liability was unknown on the petition date, [the state]

could have filed an unliquidated, pre-petition claim in order to preserve its right to

recover the sum in dispute."  In *In re Robert Stone Cut Off Equip., Inc. and Bentley*

*Weldery & Mach. Co.*, 98 B.R. 158, 162 (Bankr. N.D.N.Y. 1989), the court refused to

permit a state to untimely amend a timely filed proof of claim for a corporate franchise

tax to add a large claim for a withholding tax.  "Although there is no evidence that the

State intentionally or negligently delayed in filing the estimated proof of claim for

withholding taxes, the fact remains it did so forty-one months after the bar date at the

close of the Debtor's case and offered no justification as to why it could have timely filed

an 'estimated' claim for withholding taxes subject to later resolution."  *Id.* (citing 11

U.S.C. §§ 501, 502; FED. R. BANKR. P. 3006, 3007).

In *PT-1*, 403 B.R. at 277, the court refused to permit the Internal Revenue Service

("IRS") to file a late request for payment of administrative expenses for taxes due from

the petition date to the end of that tax year.  The IRS argued that one of its four requests

for payment should be allowed because "the Administrative Bar Date was only three

months after [the debtor] submitted its tax return for the Short Period," and "it [wa]s not

even clear that the IRS had begun an exam of the debtors' income tax liability for the

2001 year."  *Id.* at 258-60 (internal quotation marks and citation omitted).  In refusing to

17

permit the late-filed request, the court reasoned that "[t]he IRS [did] not explain why

three months was an insufficient time in which to calculate the tax liability, or, at a

minimum, file an estimated request, and then amend it at a later time." *Id*. at 260 (citing

*Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)*, 419 F.3d

115, 133 (2d Cir. 2005) ("*Enron*")).  The administrative bar date order there specifically

applied to "request[s] for payment of an administrative expenses allowable pursuant to 11

U.S.C. § 503(b), arising from and <u>after March 9, 2001</u> through the date of this Order . . . .

"  (Order Setting Last Day To File Administrative Proofs of Claim, *PT-1 Commc'ns, Inc.,*

Case No. 1-01-12655-cec, (October 24, 2002) (ECF # 411).)  The court did not

specifically analyze the "arising from" language.

      Here, the Objectors represent that other local Texas taxing authorities, represented

by the Tax Authorities' counsel, filed estimated claims in January 2009 following the

abandonment of the Debtors' personal property.  (Hr'g Tr. at 4:8-9 ("[A]ll of the other

Texas taxing authorities did submit exactly those estimates"); Objectors' Reply at ¶ 11

n.2 (identifying the specific claims).)  Despite that the Texas Tax Code does not require

the Tax Authorities to finalize the tax bills until October 2009, the Tax Authorities have

not satisfied the Court that they could not have filed estimated requests for payment in

January 2009.

3.    *The Failure of the Debtors to File Tax Returns Does Change the
Date of When The Event Giving Rise to the Liability Occurred*

The Court also rejects the argument that the Tax Authorities could not file their

requests for payment because the Debtors did not timely file their tax returns.  Other

courts hold that a debtor's failure to timely file a tax return will not affect when the claim

occurred and thus whether the request for payment was timely.  Instead, the appropriate

solution is for the tax authority to move to extend the time to file a request for payment.

*See In re Larry Merritt Co.*, 166 B.R. 875, 879-80 (Bankr. E.D. Tenn. 1993).  The Tax

Authorities made no such motion here, nor did they challenge the entry of the

Administrative Bar Date Order.

Courts make decisions whether an untimely return justifies the failure to file a

claim based on equitable considerations.  In *In re Larry Merritt Co.*, 166 B.R. at 879-80,

the court rejected the IRS' argument that "the debtor's failure to timely file the required .

. . tax returns serves to automatically extend the claims bar date to permit allowance of its

[prepetition] priority claim as timely filed"; instead, the court lacked discretion "to treat

the IRS claim in the instant proceeding as timely filed when the IRS received notice and

no extension was requested prior to expiration of the . . . bar date" and "the IRS regularly

file[d] estimated tax claims on a timely basis which it thereafter amends when the

debtor's tax liability is finally determined."  (internal citations omitted).  Conversely, in

*In re Midwest Teleproductions Co., Inc.*, 69 B.R. 675, 677 (Bankr. N.D. Ohio 1987), the

court refused to provide an "open invitation to the IRS to sleep on its rights," as "it could

have filed an estimated proof of claim."  However, "the equitable principles of clean

hands guide[d] the court. . . .  "  *Id.*  It overruled the debtor's objection to the untimely

prepetition claim because "[t]o a significant extent the lateness of the IRS' filing of the

19

claim was due to the delay of the debtor in preparing the informational returns." *Id*.

While the Debtors did not timely file returns, the Tax Authorities called the Stores in

January and consciously decided not to file proofs of claim until they determined whether

certain Stores had been closed prior to January 1, and any taxes should be assessed, and

the other Texas tax authorities were not impaired in estimating claims despite the

Debtors' failure to file returns.  (Hr'g Tr. at 4:8-9; Objectors' Reply at ¶ 11 n.2.)

Furthermore, the Debtors never filed the returns.  (Hr'g Tr. at 7:11-13.)  Thus, the

"lateness" was not due to the Debtors' failure to file the returns to a "significant extent."

The Tax Authorities violated the Administrative Bar Date Order by failing to file

their requests for payment by the later of 30 days from January 1, 2009 or March 30,

2009.

**C.    The Tax Authorities Have Not Met Their Burden to Demonstrate
Excusable Neglect for the Late Filing of the Tax Claims**

FED R. BANKR. P. 3003(c)(3) permits proofs of claim for prepetition amounts to

be filed after the expiration of the period set by a court under the conditions in FED. R.

BANKR. P. 3002(c)(2), (3), (4) and (6), none of which are applicable here, or for "cause."

FED. R. BANKR. P. 9006(b)(1) provides that after the expiration of a specified period

originally provided for an act, the court may for cause shown "on motion . . . permit the

act to be done where the failure to act was the result of excusable neglect."

In interpreting "cause" under FED R. BANKR. P. 3003(c)(3), the Supreme Court

has held that FED. R. BANKR. P. 9006(b)(1) gives a bankruptcy court the authority to

"permit a late filing if the movant's failure to comply with an earlier deadline 'was the

result of excusable neglect.'"  *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*,

507 U.S. 380, 382 (1993) ("*Pioneer*") (citing FED. R. BANKR. P. 9006(b)).  The

"determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id*. at 395. "The most significant of the four factors and the one that the courts most carefully examine is the 'reason for the delay.'" *In re Northwest Airlines Corp.*, Case No. 05-17930 (ALG), 2007 WL 498285, *3 (Bankr. S.D.N.Y. Feb. 9, 2007) (citations omitted); *see also Enron*, 419 F.3d at 122-23. "[O]nly in unusual instances would inadvertence, ignorance of the rules, or mistakes construing the rules . . . constitute excusable neglect." *In re Northwest Airlines Corp.*, 2007 WL 498285, at *3 (internal quotation marks and citations omitted). *See also Enron*, 419 F.3d at 126 (citing *Pioneer*, 507 U.S. at 392); *Graphic Commc'ns Int'l Union*, *Local 12-N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5-6 (1st Cir. 2001) (in appeal context, noting "when a party's or counsel's misunderstanding of clear law or misreading of an unambiguous judicial decree is the reason for the delay . . . we have continued to uphold findings of 'no excusable neglect' where the court cited the absence of unique or extraordinary circumstances").

"The creditor seeking allowance of a late claim bears the burden of proving excusable neglect." *PT-1*, 403 B.R. at 260 (citing *Enron*, 419 F.3d at 121). In *Pioneer*, the Court found that an attorney's inadvertent failure to timely file a proof of claim constituted "excusable neglect" where the attorney assumed no bar date had been set and was unable to review the file containing the bar date notice (which had been transmitted to his client before he was retained) until after the fact due to a disruption caused by

changing firms. *Id*. at 383. However, the *In re Northwest Airlines Corp.* court concluded that the four factors were not met as the movant did not allege that notice was improperly sent, its arrival was not timely, or it was not notified of the objection deadline date. *In re Northwest Airlines*, 2007 WL 498285, at *3.

The *PT-1* court applied the *Pioneer* analysis to the IRS' request to file an administrative claim after the bar date expired, even though FED. R. BANKR. P. 3003 applies only to prepetition claims. *PT-1*, 403 B.R. at 259-60. As noted *supra*, in *PT-1*, "[t]he only reason offered by the IRS for the delay [wa]s that the December 23, 2002 bar date was three months after the Debtors' submission of its tax return for the Short Period, and it is not even clear that the IRS had begun an exam of the debtors' income tax liability for the 2001 year," and "[t]he IRS does not explain why three months was an insufficient time in which to calculate the tax liability, or, at a minimum, file an estimated request, and then amend it at a later time." *Id.* at 259-60 (internal citations omitted). The court rejected the IRS' argument that had it requested an expedited tax review under section 505(b) of the Bankruptcy Code, it would have had 180 days from the filing of the relevant tax year's return to complete its exam, a time period which ended four months after the Administrative Bar Date. *Id.* at 261. While it acknowledged that the Administrative Bar Date order could not shorten the section 505(b) time period, no request for taxes (as opposed to penalties or interest) was filed after the purported end of the section 505(b) period. *Id*. at 261. Furthermore, it determined that the IRS did not meet its burden to present evidence regarding prejudice to the debtors, or the impact that the allowance of the request would have on judicial proceedings, and thus those factors could not weigh in favor of permitting the untimely claim. *Id*.

Here, none of the Tax Authorities has presented evidence such that the *Pioneer* factors weigh in its favor; and none has demonstrated "excusable neglect." The Tax Authorities have not provided any reason for the delay other than the fact that they did not believe they were required to file a proof of claim under the rules, and they were waiting for the tax rolls to determine whether the Debtors had personal property at the Stores. The lack of tax rolls did not prevent seven other local Texas tax authority claimants from filing estimated tax claims, all of whom were represented by counsel for the Tax Authorities. The Tax Authorities called the Stores in January, but chose to wait to file proofs of claim until they knew the Stores had not been closed prior to January 1, 2009. The delay was within reasonable control of the Tax Authorities; they chose to take a risk, and the Court will not permit them to correct their mistakes now. The Court finds that the Tax Authorities have not demonstrated "excusable neglect" sufficient to permit late filing of their claims.

## CONCLUSION

Accordingly, the Court **SUSTAINS** the Debtors' and the Committee's Objections to Proofs of Claim Nos. 675, 676, and 677, and **DISALLOWS** the Tax Claims in their entirety.

**IT IS SO ORDERED.**

DATED:        July 27, 2010
              New York, New York

              _____/s/Martin Glenn_____
                    MARTIN GLENN
              United States Bankruptcy Judge