Joel H. Levitin
Richard A. Stieglitz Jr.
CAHILL GORDON & REINDEL LLP
Eighty Pine Street
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420

*Attorneys for the*
*Debtors and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
In re:                                          :
                                                :    Chapter 11
BH S&B HOLDINGS LLC, <u>et al</u>.,             :
                                                :    Case No.: 08-14604 (MG)
                    Debtors.                    :
                                                :    Jointly Administered
---------------------------------------------------------------- :
                                                X

## DEBTORS' EMERGENCY MOTION FOR TURNOVER OF FUNDS IMPROPERLY PAID TO COMMITTEE PROFESSIONALS AND RELATED RELIEF

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"),[1] by and through their undersigned attorneys, hereby file this emergency motion (the

---

[1]     The other Debtors in these cases are BHY S&B Intermediate Holdco LLC (Case No. 08-14605 (MG), EIN 26-3732361); BH S&B Retail LLC (Case No. 08-14606 (MG), EIN 26-2282554); BH S&B Lico LLC (Case No. 08-14607 (MG), EIN 26-3445450); Heritage Licensing LLC (Case No. 08-14608 (MG), EIN 26-3473212); Fashion Plate Licensing LLC (Case No. 08-14609 (MG), EIN 26-3473238); Cubicle Licensing LLC (Case No. 08-14610 (MG), EIN 26-3445507); and BH S&B Distribution LLC (Case No. 08-14611 (MG), EIN 26-3382611).

"Motion")[2] for an order, pursuant to Bankruptcy Code §§ 105 and 549, directing turnover of funds improperly paid to professionals (collectively, the "Committee Professionals")[3] for the official committee of unsecured creditors appointed in these cases (the "Committee") and related relief. In support of the relief requested in this Motion, the Debtors have submitted and rely upon the declaration (the "Tetreault Declaration") of Robert Tetreault, which was filed contemporaneously herewith, and respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105 and 549.

## SUMMARY OF RELIEF REQUESTED

2. As this Court is aware, there have been several extensively-negotiated and Court-approved stipulations in these cases. These stipulations provided, among other things, for the establishment of a $1 million escrow to fund professional fees and expenses in connection with the Committee's pursuit of estate litigation claims, and entirely separate funds for the Debtors' professionals to perform administrative functions to resolve claims and wind down the Debtors' estates.

---

[2] Contemporaneously herewith, the Debtors filed a motion to schedule an expedited hearing on this Motion.

[3] The Committee Professionals are Arent Fox, counsel to the Committee; CBIZ Mahoney Cohen, financial advisor to the Committee; and Tarter Krinksy, conflicts counsel to the Committee.

3. Despite the clear language of these stipulations limiting reimbursement of litigation-related expenses to the $1 million in the escrow account, the Committee Professionals have, to date, incurred more than $2,236,631 and have been paid in excess of $1.3 million in connection with estate litigation, including $379,033 improperly paid from the funds set up to cover professional fees and expenses primarily of the Debtors' professionals for general administrative and other ministerial matters. See Tetreault Declaration, ¶ 4.[4]

4. To remedy this situation and to enable them to wind down these estates and to complete the claims-reconciliation process, as well as to provide the Court with a complete picture of the current facts and circumstances of these cases as it considers other motions and pleadings before it, the Debtors have filed this Motion and request entry of an order requiring the immediate turnover by the Committee Professionals of payments that were incorrectly made from sources other than the litigation escrow and a ruling by this Court that the Committee Professionals are not entitled to any further payments from the Debtors' estates on account of litigation-related work. See Id. at ¶¶ 8, 9.

5. The Debtors also intend to object to the Committee Professionals' fees and expenses incurred for non-litigation matters because such work was beyond the scope of the Committee's role in these cases given that they agreed that any distributions to unsecured creditors would be limited to a portion of any litigation recoveries.

---

[4] The figures set forth in this Motion and the Tetreault Declaration are derived from detailed fee statements of the Committee Professionals in the possession of the Debtors. The Debtors reserve the right to update these amounts and to seek turnover of such updated amounts.

## FACTUAL BACKGROUND

6. On November 19, 2008 (the "Petition Date"), the Debtors each filed with this Court separate, voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, and on November 21, 2008, the Court entered an order jointly administering the Debtors' cases. The Debtors continue to manage their properties and operate their business as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

7. On November 26, 2008, the Office of the United States Trustee appointed the Committee. No trustee or examiner has been appointed in these cases.

8. Shortly after the Petition Date, the Debtors commenced "going out of business" sales in their stores. The Debtors concluded these sales on or about January 16, 2009, and since then, they have been winding down their estates and reconciling administrative and other claims, making significant progress in recent months, and are very near to completing such tasks.

Cash Collateral Stipulation

9. On November 24, 2008, this Court entered an interim order (Docket No. 78), among other things, approving the Debtors' proposed DIP facility, under which the Debtors obtained approximately $60 million of financing from certain lenders (as described in such order, the "Lenders").

10. On January 5, 2009, the Lenders terminated the DIP facility, and on January 7, 2009, the Debtors and the Committee filed a joint emergency motion (the "Emergency Cash Collateral Motion") (Docket No. 242) for the use of cash collateral, which motion was opposed by the Lenders.

11. The Debtors, the Committee, and the Lenders reached a resolution to the Emergency Cash Collateral Motion and related disputes, which was memorialized in a stipulation and agreed order, dated January 8, 2009 (the "Cash Collateral Stipulation") (Docket No. 251),[5] authorizing the Debtors to use cash collateral and granting other agreed-upon relief.

12. Among other things, under the Cash Collateral Stipulation, the Lenders agreed to permit the use of certain cash for specific purposes, $1 million of which was made as a loan and wired directly to a separate escrow account (the "Litigation Escrow"), "to fund **all fees and expenses** of ... prosecution of the Litigation Claims." Cash Collateral Stipulation, pp. 4, 5 (emphasis added). "Litigation Claims" are defined as "any and all claims and causes of action of the Debtors and their estates (including, without limitation, any and all avoidance action claims and causes of action under Chapter 5 of the Bankruptcy Code) or otherwise, other than any claims which relate exclusively to the recovery of amounts held and payments made by" the Stone Barn debtors. Id.

13. The Cash Collateral Stipulation also permitted the Debtors to use certain funds (collectively, the "Professional Fees Funds") to complete their then-pending going-out-of-business sales and the subsequent wind down of these estates, including payment of professional fees not related to Litigation Claims in the original-estimated amount of $1.656 million. See Cash Collateral Stipulation, pp. 4, 5 and Exh. A.

---

[5] A true and correct copy of the Cash Collateral Stipulation is attached hereto as Exhibit A and is incorporated herein by reference.

Standing Stipulation

14. In connection with the Cash Collateral Stipulation and the establishment of the Litigation Escrow to fund the Committee's pursuit of Litigation Claims, the Debtors and the Committee entered into a stipulation and order, dated January 21, 2009 (the "Standing Stipulation") (Docket No. 286),[6] wherein the Committee was authorized, among other things, to pursue Litigation Claims on behalf of the Debtors' estates.

15. In accordance with the Cash Collateral Stipulation, the Standing Stipulation provided that:

> **all** allocated fees and expenses incurred after the date of entry of [this] Order shall be paid and satisfied **from the litigation fund** set up in accordance with the Cash Collateral [Stipulation] by the Court on January 8, 2009 ... or out of the proceeds or recovery from such litigation, and **shall not reduce the Professional Fees Funds** set up in accordance with the Cash Collateral [Stipulation].

Standing Stipulation, ¶ 5, p. 3 (emphasis added).

16. Following entry of the Cash Collateral Stipulation and the Standing Stipulation, the Committee Professionals began differentiating between at least certain litigation matters[7] to be paid from the Litigation Escrow and other matters, which should have been very limited, to be paid from the Professional Fees Funds in their monthly fee statements served upon the Debtors, the Lenders, and the United States Trustee. The Committee Professionals continued this practice until the $1 million in the Litigation Escrow was exhausted.

---

[6] A true and correct copy of the Standing Stipulation is attached hereto as <u>Exhibit B</u> and is incorporated herein by reference.

[7] The Committee Professionals failed to include fees and expenses for numerous additional estate litigation matters that also should have been paid only from the Litigation Escrow.

Conversion Motion Settlement Stipulation

17. On July 7, 2009, the Lenders filed a motion (the "Conversion Motion") (Docket No. 472) for an order converting the Debtors' Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code. On July 21 and 22, 2009, the Debtors and the Committee filed objections to the Conversion Motion (Docket Nos. 481 and 484).

18. Following a preliminary hearing on the Conversion Motion held on July 28, 2009, the Debtors, the Committee, and the Lenders engaged in extensive negotiations that eventually resulted in a detailed settlement that was embodied in a stipulation and agreed order, dated September 16, 2009 (the "Conversion Motion Settlement Stipulation") (Docket No. 530).[8]

19. The Conversion Settlement Stipulation essentially provided for the allocation of all existing and anticipated cash of the Debtors, including establishing distinct, separate funds, each specifically earmarked , as follows:

(a) $400,000 was set aside to cover incurred and projected future unpaid fees and expenses of the Lenders' attorneys;

(b) $700,000 was set aside to cover incurred but unpaid Court-allowed professional fees and expenses not related to Litigation Claims of the Debtors' professionals, the Committee Professionals, the Debtors' claims agent, and the United States Trustee incurred through July 31, 2009 (including holdbacks); and

(c) $300,000 was set aside to cover projected Court-allowed fees and expenses not related to Litigation Claims of the Debtors' professionals, the Committee Professionals, the Debtors' claims agent, and United States Trustee subsequent to August 1, 2009.

---

[8] A true and correct copy of the Conversion Motion Settlement Stipulation is attached hereto as Exhibit C and is incorporated herein by reference.

20. The Conversion Motion Settlement Stipulation also specifically identified the Litigation Escrow, reiterating that $1 million was wired directly to a separate account "to fund **all fees and expenses** of the estates' prosecution of the Litigation Claims," Conversion Motion Settlement Stipulation, ¶ G, p. 3, incorporating the same exact definition of Litigation Claims set forth in the Cash Collateral Stipulation.

21. Indeed, in multiple places in the Conversion Motion Settlement Stipulation, it specifically stated that "any Court-allowed fees and expenses of any of the Committee's professionals related to pursuit of the Litigation Claims **shall only be paid out of the Litigation [Escrow]**." Id., ¶ 3(c),(d), pp. 8,9 (emphasis added).

Recent Events

22. Since approval of the Cash Collateral Stipulation, the Standing Stipulation, and the Conversion Motion Settlement Stipulation, the Committee Professionals were paid for fees and expenses related to Litigation Claims not only from the Litigation Escrow, which has been exhausted for some time, but also from the Professional Fees Funds, in the total amount of $1,371,746, and they have, to date, requested payment of an additional $864,885 related to Litigation Claims. See Tetreault Declaration, ¶ 5. In addition, even though the Committee's role in these cases was limited to pursuing Litigation Claims since the entry of the Cash Collateral Stipulation (and not to administering the Debtors' estates), the Committee Professionals have managed to request payment of fees and expenses of $1,831,105 and been

paid fees and expenses of $726,018, since that date for such purportedly administrative and ministerial functions. See Id. at ¶ 6.[9]

23. Despite recent requests by the Debtors, the Committee Professionals have failed to return such improper payments and/or to acknowledge the clear limitation on their right to recover litigation-related and other fees and expenses.

24. The Debtors are engaged in the final stages of reconciling administrative claims to complete the wind down of their estates,[10] and they are close to determining whether they can pay such claims in full or will need additional sources of funding.[11] See Tetreault Declaration, ¶ 8.

Conversion Motion

25. On November 1, 2010, the United States Trustee filed a motion, and accompanying memorandum of law (together, the "UST Conversion Motion"), to convert the

---

[9] The Debtors reserve the right to seek disgorgement of any portion of these fees that have been paid to the Committee Professionals for administrative or ministerial tasks that should have been, and were properly, performed by the Debtors. In addition, the Debtors are investigating the circumstances of the Committee Professionals' retention in these cases. Depending on the result of any such investigation, the Debtors also reserve the right, if appropriate, to seek disgorgement of all fees and expenses that have been paid to the Committee Professionals in these cases.

[10] At this time, of the approximately 150 administrative claims that were asserted against the Debtors and their estates, only 17 are outstanding, with 13 scheduled to be considered by this Court on December 8, 2010. Of the remaining claims, the Debtors believe they will either be allowed, settled, or paid from the escrow established pursuant to their settlement with the Stone Barn debtors. The Debtors also believe that certain of the claims scheduled to be considered on December 8th will be settled or otherwise resolved prior to that hearing.

[11] The Debtors believe that, if necessary and if this Motion is granted, there are potential sources of the funding to complete the wind-down process.

Debtors' cases to cases under Chapter 7 of the Bankruptcy Code. Among other things, the UST Conversion Motion argues that the Debtors' cases are clearly administratively insolvent.

26. The Debtors intend to file an objection to the UST Conversion Motion arguing, among other things, that if the relief requested in this Motion is granted, these cases are not administratively insolvent and that conversion may not be warranted at this time. See Tetreault Declaration, ¶ 9. To the extent the Court does grant the UST Conversion Motion, Cahill Gordon & Reindel LLP, counsel to the Debtors, on behalf of itself and along with potentially other parties, intends to pursue the relief requested in this Motion or similar relief, as appropriate.

## **RELIEF REQUESTED**

27. The Debtors respectfully request entry of an order, pursuant to Bankruptcy Code §§ 105(a) and 549, (a) directing the Committee Professionals immediately to turn over all payments made from the Professional Fees Funds that were related to Litigation Claims and were paid from funds other than those in the Litigation Escrow in the amount of $379,033 and (b) ruling that the Committee Professionals are not entitled to any further payment on account of their work related to Litigation Claims (except out of proceeds of Litigation Claims, to the extent permitted) because there are no funds left in the Litigation Escrow.[12]

---

[12] The Debtors intend to object to the interim and final allowance of all fees and expenses that have been and may be requested by the Committee Professionals in these cases. In addition, the Debtors reserve the right to pursue any other claims or related actions against the Committee Professionals and any other parties in connection with any other breaches or violations of the Cash Collateral Stipulation, the Standing Stipulation, and the Conversion Motion Settlement Stipulation and for any other valid reasons, including that the Committee Professionals' retention should not have been approved by this Court.

## BASIS FOR RELIEF REQUESTED

28. By this Motion, the Debtors are simply requesting that this Court enforce its prior agreed-upon orders with respect to payment of the Committee Professionals. Lenders' counsel has informed the Debtors that the Lenders will be filing a statement in support of the relief sought in the Motion and, in connection therewith, that the Lenders concur with the Debtors' contention that substantial payments have been made to the Committee Professionals (which they have refused to return) for work relating to the Committee's prosecution of the Litigation Claims from sources other than the Litigation Escrow, which is prohibited by the express terms of at least three agreed-upon orders entered in these Cases, but that the Lenders reserve all other rights.

29. First, the Debtors request the turnover of payments incorrectly made to the Committee Professionals out of the Professional Fees Funds for fees and expenses related to Litigation Claims. This request is in accordance with the specific terms of the Cash Collateral Stipulation, the Standing Stipulation, and the Conversion Motion Settlement Stipulation, which were all approved and so ordered by this Court, and is authorized by Bankruptcy Code §§ 105 and 549.

30. To enable a debtor to receive turnover of improper payments, Bankruptcy Code § 549 provides, in pertinent part, that a debtor "may avoid a transfer of property of the estate ... that occurs after the [petition date] ... and that is not authorized" by the court. In

addition, Bankruptcy Code § 105(a),[13] which empowers a court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, provides this Court with authority to enforce its own prior orders.

31. Thus, this Court has more than ample authority to avoid payments made in violation of its orders. The Debtors submit that even a cursory review of the Cash Collateral Stipulation, the Standing Stipulation, and the Conversion Motion Settlement Stipulation support granting the relief requested herein, because substantial payments were made to the Committee Professionals out of sources clearly not permitted by these orders and for tasks that the Committee Professionals were not anticipated, authorized, or requested to perform and that did not provide any benefit to the Debtors' estates, particularly given that the Committee agreed that unsecured creditors' distributions would be limited to a portion of the recoveries from the Litigation Claims the Committee Professionals were supposed to bring using the $1 million in the Litigation Escrow that was earmarked for that purpose. These mistakes need to be fixed not only to enable the Debtors to resolve these cases, but also to ensure that the Committee Professionals are not unjustly enriched.

32. Second, to avoid potential further disputes, the Debtors submit that this Court should rule, as already provided for by the Cash Collateral Stipulation, the Standing Stipulation, and the Conversion Motion Settlement Stipulation, that the Committee Professionals are not entitled to any further payment on account of their work related to the Litigation Claims.

---

[13] The purpose of Bankruptcy Code § 105(a) is to ensure a bankruptcy court's power to take whatever action "is appropriate or necessary in aid of the exercise of [its] jurisdiction." 2 Collier on Bankruptcy ¶ 105.01 (15th rev. ed. 1997); see also In re Joint E. & S. Dist. Asbestos Litig., 129 B.R. 710, 843 (S.D.N.Y. 1991).

33. Accordingly, for the reasons set forth above, this Court should approve the Motion and grant the relief requested herein.

**NOTICE**

34. Notice of this Motion has been given via e-mail to the United States Trustee, counsel to the Committee, and counsel to the Lenders. All other parties that have filed notices of appearance have received ECF service of the Motion. The Debtors submit that no other or further notice need be given under the circumstances.[14]

**NO PRIOR APPLICATION**

35. Other than any motions or other papers filed in connection with the prior approval of the Cash Collateral Stipulation, the Standing Stipulation, and the Conversion Motion Settlement Stipulation, no previous request for the relief sought in this Motion has been made to this or to any other court.

---

[14] Contemporaneously herewith, the Debtors filed a motion to approve this limited notice.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form filed herewith, granting the relief requested in the Motion and such other and further relief as may be just and proper under the circumstances.

Dated: New York, New York
November 10, 2010

Respectfully submitted,

CAHILL GORDON & REINDEL LLP

 /s/  Richard A. Stieglitz Jr.
Joel H. Levitin
Richard A. Stieglitz, Jr.
Eighty Pine Street
New York, New York  10005
Telephone:  (212) 701-3000
Facsimile:  (212) 269-5420
jlevitin@cahill.com
rstieglitz@cahill.com

*Attorneys for the
Debtors and Debtors-in-Possession*

# EXHIBIT A

**The Cash Collateral Stipulation**

**EXHIBIT B**

**The Standing Stipulation**

# EXHIBIT C

**The Conversion Motion Settlement Stipulation**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| BH S&B HOLDINGS LLC, <u>et al</u>., | Case No.: 08-14604 (MG) |
| Debtors. | Jointly Administered |

------------------------------------------------------------

**ORDER DIRECTING TURNOVER OF FUNDS IMPROPERLY PAID TO COMMITTEE PROFESSIONALS AND GRANTING RELATED RELIEF**

Upon consideration of the emergency motion (the "Motion")[1] of the Debtors for an order, pursuant to Bankruptcy Code §§ 105 and 549, directing turnover of funds improperly paid to the Committee Professionals, as described in the Motion, and granting related relief; and upon consideration of the Tetreault Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and the Court having found that good and sufficient cause exists for granting the Motion; and upon the record of these Chapter 11 cases and any hearings held to consider the Motion; and it appearing that the relief requested in the Motion is appropriate in the context of these cases, in accordance with the terms of the Cash Collateral Stipulation, the Standing Stipulation, and the Conversion Motion Settlement Stipulation, wherein the compensation for Committee Professionals for services related to Litigation Claims was capped at $1 million, and where the Committee Professionals' role in these cases was limited to investigation and prosecution of Litigation Claims; and it appearing that the relief requested in the Motion is in the best interests of the

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Debtors and their respective estates, their creditors, and all other parties-in-interest; and it appearing that notice of the Motion was adequate and proper under the circumstances of these cases, and it appearing that no other or further notice need be given; it is hereby

ORDERED that the Motion is granted as set forth herein; and it is further

ORDERED that, pursuant to Bankruptcy Code §§ 105 and 549, $379,033 in payments made to the Committee Professionals from the Professional Fees Funds that were related to Litigation Claims and should have been paid from the Litigation Escrow shall immediately be turned over to the Debtors to be transferred and deposited into the Professional Fees Funds; and it is further

ORDERED that, in accordance with the terms of the Cash Collateral Stipulation, the Standing Stipulation, and the Conversion Motion Settlement Stipulation, the Committee Professionals shall not be entitled to any further payment on account of their work related to Litigation Claims (other than from proceeds of Litigation Claims, to the extent, if any, permitted under the Cash Collateral Stipulation, the Conversion Motion Settlement Stipulation, and/or the Standing Stipulation, as applicable), and any payment requests in excess of the $1 million in the Litigation Escrow are denied; and it is further

ORDERED that nothing set forth in this Order or in the Motion is or shall be deemed a waiver or relinquishment of any rights, claims, or related actions against the Committee Professionals or any other parties in connection with any breaches or violations of the Cash Collateral Stipulation, the Standing Stipulation, or the Conversion Motion Settlement Stipulation or for any other valid reasons; and it is further

ORDERED that the terms and conditions of this Order shall be immediately enforceable and effective upon its entry; and it is further

ORDERED that the Debtors are authorized and empowered to take any necessary actions to implement and effectuate the terms of this Order; and it is further

ORDERED that this Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

Dated: _____ __, 2010
New York, New York

                                                  Honorable Martin Glenn
                                                  United States Bankruptcy Judge