Robert M. Hirsh, Esq.
ARENT FOX LLP
1675 Broadway
New York, New York 10019
(212) 484-3900

Counsel for the Official Committee of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                  :    Chapter 11

In re                        :

                                  :    Case No 08-14604 (MG)

BH S&B HOLDINGS LLC, *et al.*[1],    :

                                  :    (Jointly Administered)

                  Debtors.  :    Hearing Date: Nov. 15, 2010 at 4:00 p.m.

                                  :    Objection Deadline: Nov. 15, 2010 at 12:00 p.m.

-------------------------------------------------------x

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO DEBTORS' EMERGENCY MOTION FOR TURNOVER OF FUNDS
IMPROPERLY PAID TO COMMITTEE PROFESSIONALS AND RELATED RELIEF**

**TO:    THE HONORABLE MARTIN GLENN
          UNITED STATES BANKRUPTCY JUDGE**

        The Official Committee of Unsecured Creditors (the "Committee") of BH S&B Holdings

LLC, *et al*., (the "Debtors"), by its attorneys Arent Fox LLP ("Arent Fox"), hereby submits this

objection (the "Objection") to the Debtors' Emergency Motion for Turnover of the Funds

Improperly Paid to Committee Professionals and Related Relief (the "Turnover Motion").  In

support of this Objection, the Committee respectfully represents as follows:

<u>**PRELIMINARY STATEMENT**</u>

        1.      This Turnover Motion is nothing more than a misguided attempt by the Debtors'

counsel to improperly recover funds paid to the Committee professionals for fees and expenses

---

[1]  The Debtors are: BH S&B Holdings LLC; BHY S&B Intermediate Holdco LLC; BH S&B Retail LLC; BH S&B Lico LLC; Heritage Licensing LLC; Fashion Plate Licensing LLC; Cubicle Licensing LLC; and BH S&B Distribution LLC.

incurred for their representation of the Committee, authorized by the Debtors' Responsible Officer, and approved by the Court. By the Turnover Motion, Debtors' counsel is trying for a last-ditch effort to avoid the inevitable and needed conversion of this Chapter 11 proceeding to one under Chapter 7, and to improperly gain leverage over what appears to be a personal attack on Committee counsel masked in a fee dispute that dates back to the filing of the Committee's limited objection to the fees and expenses incurred by Debtors' professionals many months ago.

2.      The Turnover Motion must be denied based on several procedural and legal grounds. At the outset, actions for the turnover of estate property under section 549 of the Bankruptcy Code must be brought by the commencement of an adversary proceeding and not, as here, by motion, because section 549 places the burden of proof on the Trustee which can only be met by providing actual evidence to the court rather than, as Debtors' counsel attempts here, through self-serving interpretations of partially quoted provisions of court approved stipulations and orders.

3.      To the extent there are any issues with payments of fees paid to any retained professionals in these cases, the proper forum to raise such issues is during the fee application process, and not by attempting at this point to block the necessary conversion of these cases to Chapter 7.

4.      Moreover, even if Debtors' counsel had properly commenced its Turnover Motion by way of an adversary proceeding, it must still be dismissed because Debtors' counsel failed to meet not one, but two requirements of section 549, namely (1) the funds at issue were not property of the estate, and (2) payment of the funds were authorized by the court. Accordingly, the Turnover Motion must be denied.

5.     Additionially, even though all parties, the Debtors, Lenders and the Committee, made every possible effort to successfully liquidate any remaining assets of this estate, it is now clear that such liquidation can only be achieved by converting these cases from Chapter 11 to Chapter 7 as the Debtors' are administratively insolvent, and more importantly, it is clear at this juncture that it is impossible to propose a feasible liquidating plan.  Indeed, these cases should have been converted several months ago when the Debtors failed to file a plan of liquidation in accordance with the January 8th Order (defined below).  Debtors' counsel cannot now try to remedy this default or further stall the inevitable conversion by this futile Turnover Motion at the detriment of the estates creditors.   Debtors' counsel also cannot use this Turnover Motion to improperly seek the return of funds for its own monetary interests.

## **BACKGROUND**[2]

6.     On November 19, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court").  No trustee or examiner has been appointed in these cases, and the Debtors continue to operate as debtors-in-possession pursuant to Sections 1107 and

7.     On January 8, 2009, in an effort to continue the DIP Financing, which the pre-petition lenders, Ableco Financing LLC and A3 Funding LP (collectively, "Ableco") threatened to terminate due to the occurrence of a default, the Debtors, the Committee and Ableco negotiated a settlement and entered into the Agreed Order Authorizing Debtors to Utilize Cash Collateral and Granting Other Agreed-Upon Relief (the "January 8th Order").

---

[2]  In the spirit of brevity, this Background section does not set forth all of the stipulations, orders and provisions already described in the Debtors' Turnover Motion.  Rather, only pertinent provisions and background facts either incompletely or improperly defined by Debtors' counsel in the Turnover Motion will be set forth herein.

8. The January 8th Order provides, *inter alia*, that "the Lenders shall pay $ 5 million (the "Lender Payment") for the benefit of the Estates, which shall be used (and deemed to be earmarked) solely and exclusively to fund the following items: (a) the Debtors' payroll…in the amount of $2,344,000; (b) ***$1,656,000***, which is to be wired directly to a separate escrow account, to be allocated (and earmarked) as follows: (i) up to $250,000 for the payment of fees and expenses of attorneys for the Lenders…; and (ii) the balance (and any access of the $250,000 allocated for the Lenders' attorneys…) ***to fund the allowed fees and expenses of attorneys, accountants, and other professionals retained in the Cases pursuant to Section 327, 328, 330, 331 and 1103 of the Bankruptcy Code (the "Retained Professionals")***; ***and*** (c) $1,000,000 which is to be wired directly to a separate escrow account, to fund all fees and expenses of the Estates' prosecution of the Litigation Claims (as defined below) (the "Litigation Fund").

9. The January 8th Order defines Litigation Claims to "include any and all claims and causes of action of the Debtors and their estates (including, without limitation, any and all avoidance action claims and causes of action under chapter 5 of the Bankruptcy Code) or otherwise…"

10. On June 17, 2009, the Court entered that certain Order Granting Application for First Interim Professional Compensation of Arent Fox LLP, awarding $1,056,049.00 in fees and $22,980.43 in expenses incurred by Arent Fox in its representation of the Committee (the "First Arent Fox Compensation Order") (Docket No. 460).

11. On June 19, 2009, the Court entered that certain Order Granting Application for First Interim Professional Compensation of CBIZ Accounting, Tax and Advisory of New York, LLC ("CBIZ"), awarding $435,528.45 in fees and $$967.11 in expenses (the "First CBIZ Compensation Order") (Docket No. 464).

12.     On July 7, 2009, Ableco filed a motion for an order converting the Debtors'

Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code (the "Lenders Conversion

Motion") (Docket No. 472). The Debtors and the Committee opposed the Lenders Conversion

Motion, respectively, and following a preliminary hearing on July 28, 2009, Ableco, the Debtors

and the Committee reached an agreement that, *inter alia*, prevented the conversion and provided

the Debtors and the Committee with additional time to try to develop and prepare a plan of

liquidation.

13.     On September 16, 2009, the Court entered and approved the Stipulation and

Agreed Order Among Debtors, Committee and Lenders Settling various Disputes and Providing

for Distribution of Funds and Payment of Administrative Expenses (the "September 16th Order")

(Docket No. 530).

14.     The September 16th Order specifically provides, *inter alia*, that conversion of

these cases to cases under Chapter 7 may be prevented as long as certain events of default do not

occur.  One of these events of default requires that a Plan be effectuated on or before April 15,

2010, unless such date is extended in writing by Ableco in its sole and absolute discretion.

Although the April 15, 2010 date was extended once by Ableco, this extension has long passed,

and an event of default has indeed occurred.

15.     On December 17, 2009, the Court granted the Second Interim Application for

Interim Professional Compensation for Arent Fox, awarding $213,827.40 in fees and $6,541.41

in expenses (the "Second Arent Fox Compensation Order")(Docket No. 641).

16.     On December 22, 2009, the Court granted the Second Interim Application for

Interim Professional Compensation of CBIZ, approving fees in the amount of $69,011.80 and

expenses in the amount of $652.14 (the "Second CBIZ Compensation Order", and together with

the First Arent Fox Compensation Order, the First CBIZ Compensation Order and the Second Arent Fox Compensation Order, collectively referred to as the "Committee Professionals Compensation Orders").

17.     On November 1, 2010, the United States Trustee filed a motion, and accompanying memorandum of law to convert the Debtors' cases to cases under Chapter 7 of the Bankruptcy Code, setting forth, *inter alia*, that the Debtors' cases are clearly administratively insolvent.

## OBJECTION TO THE TURNOVER MOTION

18.     The Turnover Motion should be denied in its entirety because it fails to meet the requirements of Section 549 of the Bankruptcy Code, and is merely a misguided attempt by Debtors' counsel to seek the return of funds for, what appears to be, the sole purpose of paying its own fees and expenses prior to the inevitable conversion of this Chapter 11 proceeding as requested by the United States Trustee.

### A.     The Requirements of Section 549 Are Not Met

19.     Aside from the fact that Debtors' counsel improperly brought a section 549 claim pursuant to motion rather than an adversary proceeding, the Turnover Motion must be denied because the payments made to the Committee Professionals are not property of the estate and were authorized by the Court.  With exceptions not relevant here, section 549 of the Bankruptcy Code allows the trustee or debtor-in-possession to avoid a transfer of property of the estate (1) that occurs after the commencement of the case; and (2)…(B) that is not authorized under this title or by the Court.  *See* 11 U.S.C. § 549.  The Turnover Motion fails to meet the requirements of section 549.

20.     For a transfer to be avoided under section 549(a), it must be a transfer of "property of the estate".  "Property of the estate" is defined by the Bankruptcy Code as "all legal or equitable interests of the debtor in property as of the commencement of the case."  *See* 11 U.S.C. § 541(a)(1).  In the present case, the funds that were used to pay the fees and expenses of the professionals retained in the bankruptcy estate did not belong to the Debtors' estate.  Instead, these funds belonged to Ableco, and Ableco specifically earmarked these funds for the sole purpose of payment of professional fees as set forth in the January 8th Order.  Contrary to Debtors counsel's allegations, the January 8th Order earmarked funds in addition to the Litigation Fund for the payment of the retained professionals, including the Committee.  As set forth above, by the pertinent provision of the January 8th Order and the budget annexed thereto, Abelco specifically set aside funds in addition to the Litigation Fund for the fees and expenses incurred by Committee Professionals.

21.     As the bankruptcy court in *In re Westchester Tank Fabricators* determined, the earmarking doctrine also applies to transfers under section 549, and funds transferred that are deemed "earmarked", and not a component of the debtor's overall assets as their transfer did not diminish the amount for distribution to creditors, are not property of the estate and thus, not avoidable under section 549.  See *In re Westchester Tank Fabricators, Ltd. (Musso v. Brooklyn Navy Yard Development Corp.)*, 207 B.R. 391, 397 (Bankr. E.D. N.Y 1997).  Similarly in the present case, the payments made to the Committee Professionals were funds that belonged to Ableco and that were specifically earmarked for the payment of the fees and expenses incurred by the professionals retained in this bankruptcy proceeding.  Accordingly, the Debtors have no right to avoid the transfers made to the Committee Professionals as such transfers never belonged to the Debtors and were not property of the estate.

22.     Even if the funds in question had been property of the estate, which they are not, Debtors' counsel is still not permitted to avoid the payments made to the Committee Professionals because these transfers were specifically authorized by the Court under the Committee Professionals Compensation Orders.  Section 549 allows a trustee or debtor-in-possession to avoid a transfer "that is *not* authorized under this title or by the court."  After proper notification and hearings, this Court approved the fees and expenses incurred by Arent Fox and CBIZ in their representation of the Committee.  It is simply disingenuous of the Debtors' counsel to now assert that the Committee Professionals were somehow improperly compensated for some alleged portion of its fees and expenses that were reviewed by the Debtors, the Debtors' CRO, the Committee and the United States Trustee, and thereafter authorized by the Court. Thus, Debtors' counsel may not avoid properly authorized payments to the Committee Professionals under section 549, and therefore the relief requested by the Turnover Motion must be denied.

23.     To the extent there are any issues with payments of fees to **any** retained professionals in these cases, the proper forum to raise such issues is during the fee application process.  Here Debtor's counsel filed its Turnover Motion in a bad faith attempt to sidestep the proper path for these cases – the need to convert the cases to Chapter 7 to allow for the prospect of a return of funds to unsecured creditors.

**B.          Debtors' Counsel Fails to Meet its Burden of Proof**

24.     The reason why "turnover actions" must be commenced in an adversary proceeding is because prior to demanding the return of property, the trustee has the burden of proving with actual evidence that such demand is indeed proper, justified and warranted.  Here, Debtors' counsel utterly fails this burden.  The Debtors' Turnover Motion is nothing more than

conclusory allegations without a drop of actual evidentiary proof. The Turnover Motion itself is wrought with self-serving factual allegations and nothing more. Other than wasting further time and money, Debtors' counsel has failed to put forth any evidence to support its allegations. The evidence required to sustain a claim under section 549 of the Bankruptcy Code cannot be based on such self-serving allegations.

## CONCLUSION

For all the foregoing reasons, the Committee respectfully requests that this Court enter an order (a) denying the Turnover Motion, and (b) granting such other, further and different relief as is appropriate.

Dated: New York, New York
November 15, 2010

ARENT FOX LLP

_____/s/ Robert M. Hirsh_____
Robert M. Hirsh, Esq.
1675 Broadway
New York, NY 10019
(212) 484-3900
(212) 484-3990 (Fax)

*Counsel for the Official Committee of
Unsecured Creditors*