UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x  FOR PUBLICATION
In re:                                          :
                                                :
                                                :
BH S&B HOLDINGS, LLC, *et al.*,                 :  Chapter 11
                                                :
                                                :  Case No. 08-14604 (MG)
                                                :
                    Debtors.                    :  Jointly Administered
---------------------------------------------------------------x

**MEMORANDUM OPINION GRANTING THE UNITED STATES TRUSTEE'S MOTION
TO CONVERT THESE CHAPTER 11 CASES TO CASES UNDER CHAPTER 7**

*A P P E A R A N C E S:*

CAHILL GORDON & REINDEL LLP
*Attorneys for BH S&B Holdings, Inc.*
80 Pine Street
New York, New York 10005
By:   Richard A. Stieglitz, Esq.
      Peter J. Linken, Esq.

TRACY HOPE DAVIS
*United States Trustee for Region 2*
33 Whitehall Street, 21st Floor
New York, NY 10004
By:   Paul K. Schwartzberg, Esq.

ARENT FOX LLP
*Attorneys for the Official Committee of Unsecured Creditors*
1675 Broadway
New York, New York 10019
By:   Robert Hirsch, Esq.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
*Attorneys for Ableco Finance LLC*
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067
By:   Jonathan Shenson, Esq.

1

**MARTIN GLENN**
**United States Bankruptcy Judge**

Before the Court is the *Motion of the United States Trustee to Convert These Chapter 11 Cases to Chapter 7 Cases* (the "Motion"). (ECF # 843.) BH S&B Holdings, LLC and its affiliates (the "Debtors") filed an objection to the Motion (the "Objection"). (ECF # 876.) The official committee of unsecured creditors (the "Committee") and Ableco Finance LLC ("Ableco"), the agent for the Debtors' DIP Facility and the Debtors' largest secured lender, support the Motion. The Court heard argument of the Motion on November 15, 2010, and announced at the conclusion of the hearing that the Motion was granted with a written opinion to follow. An Order granting the Motion was entered on November 16, 2010. (ECF # 882.) This Opinion explains the Court's reasons for granting the Motion.

## BACKGROUND

In July 2008, the Debtors purchased the Steve & Barry's women clothing business in a sale pursuant to section 363 of the Bankruptcy Code. On November 19, 2008, the Debtors filed their own bankruptcy cases. Later that month, the United States Trustee ("UST") appointed the Committee, which retained Arent Fox LLP as counsel.

By January 2009, the Debtors closed the remaining 153 Steve & Barry's stores they hoped to maintain from the July 2008 purchase. The Debtors thereafter attempted to liquidate all of their assets in chapter 11. To date, no liquidation plan has been filed.

The UST's Motion is the second motion to convert these cases to cases under chapter 7 to come before the Court. Previously, on July 7, 2009, Ableco filed a motion to convert. (ECF # 472.) However, the parties were able to reconcile their differences and the case continued to proceed under chapter 11. Pursuant to a *Stipulation and Agreed Order Among Debtors,*

2

*Committee and Lenders Settling Various Disputes and Providing for Distribution of Funds and Payment of Administrative Expenses* (the "Stipulation"), Ableco provided a $1 million fund (the "Litigation Fund") to be used to pay professional fees to pursue litigation claims. (ECF # 251.) Also in a previous order, the Committee was given exclusive authority to prosecute all litigation claims. (ECF # 286.) By the Committee's own admission, the Litigation Fund has been exhausted and there are no other available sources of funding to litigate chapter 5 claims. (ECF # 852, ¶ 11.) But for the order converting these cases, the statute of limitations for commencing preference recovery actions would have expired on November 18, 2010.

The issue of the Litigation Fund's depletion came to the forefront on November 8, 2010 when Ableco objected to the Committee's motion to retain ASK Financial LLP ("ASK") to investigate and prosecute chapter 5 claims. (ECF # 855.) The motion to retain ASK proposed that ASK would receive compensation on a contingency basis, but required Ableco to subordinate its first priority lien to certain litigation costs and expenses. At a hearing on November 9, 2010, Ableco's counsel made it clear that Ableco was unwilling to further subordinate its secured claim to permit the use of its cash collateral to fund further litigation. Without Ableco's consent, the ASK agreement could not be approved. The hearing was adjourned for one day to give the parties additional time to resolve issues consensually, but the Court was then advised that ASK had instead chosen to withdraw its retention request.

The UST moves to convert these cases pursuant to sections 1112(b)(4)(A) and (J). In support of the Motion, the UST states that the Debtors' monthly operating reports are misleading and/or deficient, the Debtors' cases are administratively insolvent and the Debtors have failed to timely file a reorganization plan and disclosure statement. (ECF # 843, pp. 4-5.) Under prior orders of the Court and after several extensions, the deadline for filing a proposed disclosure

3

statement and plan was April 15, 2010. (ECF # 530.) As of the date of this Opinion, no disclosure statement or plan has been filed.

The Debtors' Objection counters that these cases "are very likely not administratively insolvent," in light of their recent motion seeking, among other things, turnover of allegedly improper payments to the Committee's professionals (the "Turnover Motion"). (ECF # 869.) The Court scheduled the Turnover Motion to be heard on shortened notice at the same time the Motion was heard. The Debtors contend that if the Turnover Motion is granted in its entirety, more than $1.15 million will be either disallowed or returned to the Debtors. (ECF # 876, ¶ 3.) The Committee opposed the Turnover Motion on procedural and substantive grounds. (ECF # 879.) In a separate order the Court denied the Turnover Motion without prejudice. The issues raised by the Turnover Motion are more appropriately dealt with, in the first instance, by a chapter 7 trustee.

## DISCUSSION

### A. Standard Under 11 U.S.C. § 1112(b)

Under section 1112(b), a court can dismiss a chapter 11 case or convert it to a case under chapter 7 "for cause" so long as it is in the best interests of both the creditors and the estate. 7 COLLIER ON BANKRUPTCY ¶ 1112.04 (16th ed. 2009). Subsection (b)(4) contains sixteen examples of events that may constitute cause. This list, however, is "not exhaustive" and courts are free to consider other factors. *See, e.g.*, *In re Ameribuild Const. Mgmt., Inc.*, 399 B.R. 129, 131 n.3 (Bankr. S.D.N.Y. 2009) (citing legislative history).

Courts may only grant motions under section 1112(b) after notice and a hearing. 11 U.S.C. § 1112(b)(1). The moving party has the burden of demonstrating cause for dismissal or conversion. *In re Loco Realty Corp.*, No. 09-11785 (AJG), 2009 WL 2883050, at *2 (Bankr.

S.D.N.Y. June 25, 2009). Bankruptcy judges have wide discretion to determine whether cause exists to dismiss or convert a case under section 1112(b). *In re Kholyavka*, No. 08-10653 (DWS), 2008 WL 3887653, at *5 (Bankr. E.D. Pa. Aug. 20, 2008) (quoting H. Rep. 595, 95th Cong., 1st Sess. 405 (1977)).

Once a party establishes cause, a court must examine whether dismissal or conversion of a case under chapter 7 is in the best interests of the creditors and the estate. 7 COLLIER ON BANKRUPTCY ¶ 1112.04[6]. Courts have looked to multiple factors to determine which action better serves the interests of creditors and the estate. Collier identifies ten such factors:

1. Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal.

2. Whether there would be a loss of rights granted in the case if it were dismissed rather than converted.

3. Whether the debtor would simply file a further case upon dismissal.

4. The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors.

5. In assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise.

6. Whether any remaining issues would be better resolved outside the bankruptcy forum.

7. Whether the estate consists of a "single asset."

8. Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.

9. Whether a plan has been confirmed and whether any property remains in the estate to be administered.

10. Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*Id.* Moreover, section 1112(b)(2) states that the court must convert or dismiss for cause shown unless:

> (A) there is a reasonable likelihood that a plan will be confirmed . . . within a reasonable period of time; and
>
> (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)–
>
>> (i)     for which there exists a reasonable justification for the act or omission; and
>>
>> (ii)    that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

### B. These Cases Are Being Converted Because There Is No Reasonable Prospect for Rehabilitation

Under section 1112(b)(4)(A), cause for conversion or dismissal is established if there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). It is not enough just to show continuing loss to the estate; the moving party must also show the absence of a reasonable likelihood of rehabilitation. *In re 1031 Tax Grp., LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007) (citing *In re Photo Promotion Assocs., Inc.*, 47 B.R. 454, 458 (S.D.N.Y. 1985) (stating that a party moving under section 1112(b)(1) must establish both the "continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation")). "In this context, rehabilitation means to put back in good condition and reestablish on a sound basis." *See In re AdBrite Corp.*, 290 B.R. 209, 216 (Bankr. S.D.N.Y. 2003).

Although a court may find that adequate "cause" exists to convert or dismiss a case, case law makes clear that the court still has discretion in deciding whether to grant or deny the motion, and should carefully examine all facts when deciding a motion to convert. *See, e.g.*, *id.*

at 215 ("The courts must evaluate losses on a case-by-case basis. Small losses over an extended period of time may be acceptable, whereas large losses in a short period may indicate that rehabilitation is not likely.") (citing *Photo Promotion Assoc.*, 47 B.R. at 458-59).

A party seeking to demonstrate cause under section 1112(b)(4)(A) must establish both the "substantial or continuing loss" prong as well as the absence of a reasonable likelihood of rehabilitation prong. *1031 Tax Grp.*, 374 B.R. at 93. As to the first prong, the Debtors continue to incur monthly losses. The Debtors' most recent Statement of Operations, which is included in their October 2010 Monthly Operating Report (the "October Report"), shows that the Debtors had a net loss of $532,427 for the month and a cumulative loss of $128,968,353 since the bankruptcy filing date. (ECF # 878.) Significantly, there is also no indication that the Debtors will receive further funding from third parties.

As to the second prong, the Debtors' intention to liquidate (rather than rehabilitate), demonstrates that there is no likelihood of rehabilitation. In *Loop Corp. v. U.S. Trustee*, 379 F.3d 511 (8th Cir. 2004), the debtor sold most of its businesses, and began negotiating a chapter 11 liquidation plan with its secured creditors and the creditors' committee. *Id.* at 513. After months of negotiations, the UST moved to convert the case, citing the debtor's negative cash flow, the liquidation plan as evidence of a lack of likelihood of rehabilitation, and mounting costs to the estate. *Id.* at 514. The debtor persuaded the court to hold the motion to give it one last opportunity to negotiate, but when that failed, and the creditor's committee joined the UST's motion, the court granted the motion to convert. *Id.* The district court affirmed. *Id.*

On appeal to the Eighth Circuit, the debtor contended that the bankruptcy court's holding amounted to a *per se* rule that liquidating debtors could not remain in chapter 11. *Id.* at 515-16. The debtor argued that a liquidating debtor by definition has negative cash flow and no prospect

of rehabilitating its business. *Id.* at 515. Therefore, the only thing preventing conversion under such circumstances is the forbearance of creditors and the UST. *Id.* at 516. The court rejected this argument, however, noting that while it was sensitive to the debtor's concerns, the bankruptcy court's ruling was consistent with the plain language of section 1112(b)(1). *Id.* at 515-16. Furthermore, the court noted while "it is difficult to imagine a liquidating debtor who will not meet the criteria for cause . . . this concern may be alleviated if the bankruptcy court's discretion under [section] 1112(b) is understood to permit the court to deny both conversion and dismissal despite a showing of cause." *Id.* at 516. In support of this statement, the court pointed to the use of the word "may" in section 1112(b). *Id.* The court concluded that the bankruptcy court had not abused its discretion in granting the motion to convert. *Id.* at 519.

A chapter 11 liquidation plan is permissible even though its basic premise is not to rehabilitate the bankrupt entity. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 184 B.R. 648, 654 (S.D.N.Y. 1995); *In re Fairmont Commc'ns*, No. 92-B-44861 (JLG), 1993 WL 428710, at *5 (Bankr. S.D.N.Y. Oct. 12, 1993); *In re Thomson McKinnon Secs., Inc.*, 126 B.R. 833, 836 (Bankr. S.D.N.Y. 1991). However, courts in this district have converted or dismissed chapter 11 cases on facts similar to those in *Loop* and this case. *See e.g.*, *In re Ntrl Plants & Lands Mgmt. Co., Ltd.*, 68 B.R. 394, 395 (Bankr. S.D.N.Y. 1986) (converting chapter 11 case, in part, because the debtor's proposed liquidating plan conceded that the business would be terminated and the debtor was losing $60,000 per month in chapter 11); *In re 3868-70 White Plains Rd.*, 28 B.R. 515, 518-19 (Bankr. S.D.N.Y. 1983) (dismissing chapter 11 petition on the ground that reorganization was impossible, in part, because the debtor's assets were fully collateralized, there was a continuing negative cash flow, and there was no possibility for an infusion of third party funds); *In re Kanterman*, 88 B.R. 26, 28 (S.D.N.Y. 1988) (finding no likelihood of rehabilitation

when the debtor lacked independent income and was not meeting any postpetition obligations, including tax obligations).

The Court, therefore, finds that cause has been established in this case within the meaning of section 1112(b)(4). Both the Debtors' financial statements reflecting continuing losses and the Debtors' intention to liquidate establish that there is no likelihood of rehabilitation. The Court is also satisfied that conversion to chapter 7 is in the best interests of the creditors and the bankruptcy estates. The statute of limitations on chapter 5 avoidance actions was due to expire on November 18, 2010. The Committee's counsel indicated that, to date, with few exceptions, no chapter 5 actions have been commenced and that consequently the estates were in danger of missing the statute of limitations cut-off. Because the carve-out for litigation expenses contained in a cash collateral order has been exhausted, and Ableco is unwilling to agree to a further carve-out or subordination, no funds are currently available to prosecute such claims. Whether the Debtors are entitled to turnover of funds allegedly erroneously paid to the Committee's professionals cannot be decided on the motion papers alone. By granting the Motion, the estate will benefit from an additional year to commence avoidance claims under the supervision of a chapter 7 trustee. *See* 11 U.S.C. § 546(a)(1)(B). Any recovery in successful actions will result in creditors receiving larger distributions from the ultimate liquidation of the estate. *See* 7 COLLIER ON BANKRUPTCY ¶ 1112.04[6].[1]

---

[1] The Debtors question the significance of the amount of potential chapter 5 claims. In the Objection, they state that "[g]iven that [the Debtors] operated for less than 90 days, . . . the Debtors wonder whether any vendors could have received significant preference payments prior to the filing of these bankruptcy cases." (ECF # 876, ¶ 5.) However, this argument is flawed because significant preference payments may have been made. During a hearing on November 9, 2010, the Committee's counsel stated that several hundred preference actions may be filed. On November 15, 2010, during a hearing on the Motion, the Committee's counsel represented that the potential face value of all avoidance actions is approximately $43 million. Of course, this representation raises serious questions why the Committee waited so long before attempting to deal with avoidance claims before the statute of limitations expired.

The Court concludes that as a result of the Debtors' continuing financial losses and Ableco's unwillingness to further subordinate its secured claim, there are simply not enough funds available to support these cases in chapter 11. Therefore, cause exists to convert these cases.

### C. These Cases Are Being Converted Because The Estates Are Administratively Insolvent

The Court further concludes that the Debtors' administrative insolvency constitutes cause to convert these cases. Although section 1112(b)(4) does not list administrative insolvency as cause to convert or dismiss a chapter 11 case, a court may still consider this factor. *See AdBrite*, 290 B.R. at 217 (citing *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997)) ("Because the list of grounds for converting or dismissing a Chapter 11 case under § 1112(b) is illustrative, not exhaustive, the court may consider other grounds and use its equitable powers to reach an appropriate result."). Courts have converted cases, in part, on the basis of administrative insolvency. *See, e.g.*, *In re Bartmann*, No. 03-04975, 2004 WL 1057662, at *2 (10th Cir. B.A.P. May 10, 2004); *In re Desmond*, 331 B.R. 38, 44 (Bankr. D.N.H. 2005).

Concern that these cases are administratively insolvent is no surprise. *See In re BH S&B Holdings LLC*, 420 B.R. 112, 124 (Bankr. S.D.N.Y. 2009) ("At the present time the debtors are, or are close to, administratively insolvent."). These cases have remained in chapter 11 principally because of Ableco's willingness to provide a carve-out for administrative expenses, subject to provisions for sharing recovery from litigation claims. The carve-out has been exhausted, and Ableco is unwilling to make additional funds available for administration of these cases. Ableco cannot be faulted for taking this position since the Committee's efforts have yielded relatively small returns at very substantial expense. The October Report indicates that

the Debtors have $2,704,976 of unrestricted cash on hand. (ECF # 878.) The October Report also provides that the Debtors have not paid professional fees totaling $2,188,902. (*Id.*) Additional applications for professional fees are pending. As the UST correctly observes in her motion, if these cases were to proceed in chapter 11, there is no doubt that the amount of unpaid professional fees would continue to grow. In addition, the Debtors have entered into stipulations with creditors granting certain claims administrative priority. (ECF ## 832, 833.) The Debtors also acknowledged during the November 15 hearing that very substantial priority claims have not been included in the monthly operating reports on file with the Court. Finally, a review of the Debtors' claim register indicates that several administrative claims have been filed against the Debtors, which in total, far exceed the Debtors' unrestricted cash after payment of professional fees. (ECF # 843, Ex. E.)

While cause exists on the basis of administrative insolvency, the Court must also determine that conversion on this ground would be in the best interests of the estate and creditors. *See* 11 U.S.C. § 1112(b)(1). One court has found that this inquiry should not focus on the interests of administrative claimants because section 1112(b) limits the court's consideration to the interests of creditors and the estate. *In re Acme Cake Co., Inc.*, No. 08-41965 (CEC), 2010 WL 4103761, at *2 (Bankr. E.D.N.Y. Oct. 18, 2010) (finding that generally holders of administrative claims are not creditors as defined in section 101(10)). However, administrative insolvency suggests diminution in the value of the estate, thereby precluding all creditors from achieving maximum economic value.

The Debtors contend that if they are successful in prosecuting several actions, including the Turnover Motion, sufficient funds will be made available so that the estates will not be

administratively insolvent.[2] (*Id.*) During the November 15 hearing, Debtors' counsel averred that if they prevailed *completely* on the Turnover Motion, the Debtors' would have positive cash on hand in the amount of $46,578 after paying all "legitimate" professional fees and expenses. This "best case" scenario would require the Debtors to prove that: (1) Committee's counsel is not entitled to any of the approximately $1.13 million it seeks in compensation for fees and expenses, (2) $379,033 in allegedly improper payments made to the Committee's counsel should be disgorged, and (3) the Committee's financial advisor is not entitled to fees and expenses in the amount of $272,092. If the Debtors do not prevail on *all* of these claims, the Debtors will be administratively insolvent.

The arguments put forth by the Debtors do not change the Court's disposition. First, as previously discussed, the Court has found that cause already exists for conversion because there are continuing losses and no reasonable prospect for rehabilitation. Therefore, even if the Court were to determine that the estates are and will remain administratively solvent, conversion would still be warranted.

Second, case law is clear that the mere hope of prevailing on potential litigation claims is not a sufficient basis to defeat a showing of cause to convert. *In re FRGR Managing Member LLC*, 419 B.R. 576, 583 (Bankr. S.D.N.Y. 2009) ("[M]ost cases reject the need to evaluate the merits of a debtor's litigation claims in deciding whether to dismiss or convert a chapter 11 case."); *see also In re Ameribuild Const. Mgmt., Inc.*, 399 B.R. 129, 134 (Bankr. S.D.N.Y. 2009). Therefore, the Court need not determine the merits of the Turnover Motion and the Claims Objections. Rather, the creditors will benefit from the appointment of a chapter 7 trustee to serve

---

[2] In the Objection, the Debtors note that they have also objected to several administrative claims (the "Claims Objections") which they believe should be expunged. (ECF # 876, ¶ 3)

as an independent fiduciary to prosecute these claims, if they exist. *See Ameribuild*, 399 B.R. at 134.

Finally, from a practical standpoint, the resolution of the issues raised in the Turnover Motion and the Claims Objections will likely require a costly fact intensive inquiry. The Court does not discount the seriousness of the assertions made in the Turnover Motion and the Claims Objections. Upon conversion, the chapter 7 trustee can investigate all of these allegations.

### D. The Debtors' Failure to File a Plan and Disclosure Statement Constitutes Cause for Conversion

Section 1112(b)(4)(J) provides that "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court" amounts to cause for conversion or dismissal. 11 U.S.C. § 1112(b)(4)(J). "Only mandatory deadlines set by the Court or by an order of the court provide the basis for invoking 1112(b)(4)(J) as a cause for a dismissal." 7 COLLIER ON BANKRUPTCY ¶ 1112.04[6][j].

The UST has also met her burden in establishing cause under section 1112(b)(4)(J). The Debtors were granted several extensions to file a disclosure statement and plan. After the termination of exclusivity, any party in interest could have filed a disclosure statement and plan. The record is clear that on September 16, 2009, the court entered an order setting April 15, 2010 as the filing deadline. (ECF # 530.) That deadline has passed but no one submitted a disclosure statement and plan. "While the complexity and nature of the case often dictate[s] its pace," it is equally clear that "a debtor cannot wallow in chapter 11." *In re Tornheim*, 181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995).

### E. Conversion of These Cases Is More Appropriate Than Dismissal

It is within the Court's discretion to convert *or* dismiss a chapter 11 case, provided the best interests of the creditors and the estate are served. *Acme Cake Co.*, 2010 WL 4103761, at *

2. Although the UST is seeking conversion of the cases to chapter 7, the Court has the option of instead dismissing the cases for cause *sua sponte*. *In re State St. Assocs., LP*, 348 B.R. 627, 641 (Bankr. N.D.N.Y. 2006).

At this juncture, it is more appropriate that the case be converted rather than dismissed. Collier articulates ten factors that are useful in determining whether the parties' interests are better served by dismissal or conversion. 7 COLLIER ON BANKRUPTCY ¶ 1112.04[7]. Several of these factors support conversion, namely the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors and the maximization of the estate's value as an economic enterprise. *Id.* At this stage, the creditors' best hope for recovery is through conversion of these cases to cases under chapter 7. Conversion will give the chapter 7 trustee one year to commence the prosecution of avoidance claims. 11 U.S.C. § 546(a)(1)(B).

## CONCLUSION

For the reasons explained above, the Court finds that sufficient cause exists to convert these cases to cases under chapter 7 and that such conversion is in the best interests of both creditors and the estate.

DATED:    November 18, 2010
         New York, New York

                                                                **/s/Martin Glenn**
                                                                    MARTIN GLENN
                                                         United States Bankruptcy Judge