UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
                               :
In re:                       :        Chapter 7 (formerly Chapter 11)
                                 :
BH S&B HOLDINGS LLC, et al.,       :        Case No.: 08-14604 (MG)
                                 :
                  Debtors.       :        Jointly Administered
                                 :
-------------------------------------------------------------- x

## SUMMARY SHEET PURSUANT TO
## UNITED STATES TRUSTEE GUIDELINES FOR REVIEWING
## APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

| | |
|---|---|
| NAME OF APPLICANT: | Cahill Gordon & Reindel LLP |
| | |
| TIME PERIOD: | November 19, 2008 through and including November 16, 2010 |
| | |
| ROLE IN CASE: | Attorneys for Debtors |
| | |
| CURRENT APPLICATION: | Total Fees Requested: $2,013,976.80 |
| | Total Expenses Requested: $125,735.50 |
| | |
| PRIOR APPLICATIONS: | See chart below |

| Application Date | Docket Number | Application Period | Fees Requested | Expenses Requested | Fees Awarded | Expenses Awarded | Continuing Holdback |
|---|---|---|---|---|---|---|---|
| 5/13/2009 | 423 | November 19, 2008 through and including March 31, 2009 | $1,171,761.80 | $121,997.80 | $1,171,261.80 | $107,997.80 | $117,126.18 |
| 9/22/09 | 536 | April 1, 2009 through and including August 31, 2009 | $325,916.20 | $11,199.99 | $324,314.20 | $8,486.24 | $32,431.42 |
| 1/29/2010 | 665, 742 | September 1, 2009 through and including December 31, 2009 | $134,082.60 | $3,269.20 | N/A | N/A | N/A |
| 10/27/2010 | 840 | January 1, 2010 through and including September 30, 2010 | $354,553.40 | $5,396.18 | N/A | N/A | N/A |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
                                  :

In re:                         :        Chapter 7 (formerly Chapter 11)
                                    :

BH S&B HOLDINGS LLC, et al.,    :        Case No.:  08-14604 (MG)
                                    :

                    Debtors.    :        Jointly Administered
                                    :

---------------------------------------------------------- x

### FINAL APPLICATION OF CAHILL GORDON & REINDEL LLP FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED

Pursuant to Bankruptcy Code §§ 330 and 331, Bankruptcy Rule 2016, and Local Bankruptcy Rule 2016-1, the law firm of Cahill Gordon & Reindel LLP ("Cahill"), bankruptcy and restructuring counsel for the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"),[1] hereby makes its final application (the "Final Application") for an order awarding it reasonable compensation for actual and necessary services rendered to the Debtors from November 19, 2008, through and including November 16, 2010 (the "Final Application Period"), in the amount of $2,013,976.80, and for reimbursement of actual and necessary expenses incurred in connection therewith, in the amount of $125,735.50, for a total of $2,139,712.30.  In support of this Final Application, Cahill respectfully represents as follows:

---

[1]    The other Debtors in these cases are BHY S&B Intermediate Holdco LLC (Case No. 08-14605 (MG), EIN 26-3732361); BH S&B Retail LLC (Case No. 08-14606 (MG), EIN 26-2282554); BH S&B Lico LLC (Case No. 08-14607 (MG), EIN 26-3445450); Heritage Licensing LLC (Case No. 08-14608 (MG), EIN 26-3473212); Fashion Plate Licensing LLC (Case No. 08-14609 (MG), EIN 26-3473238); Cubicle Licensing LLC (Case No. 08-14610 (MG), EIN 26-3445507); and BH S&B Distribution LLC (Case No. 08-14611 (MG), EIN 26-3382611).

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of these cases and this Final Application in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are Bankruptcy Code §§ 330 and 331, Bankruptcy Rule 2016, and Local Bankruptcy Rule 2016-1.

## INTRODUCTION

2.      On November 19, 2008 (the "Petition Date"), the Debtors each filed with this Court separate, voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, and on November 21, 2008, the Court entered an order providing for the joint administration of these cases.  The Debtors continue to manage their properties and operate their business as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

3.      On November 26, 2008, the United States Trustee appointed an official committee (the "Committee") of unsecured creditors.

4.      Steve & Barry's was a specialty retailer of apparel and accessories.  On July 9, 2008, the companies comprising Steve & Barry's (now known as "Stone Barn" and collectively referred to below as the "Stone Barn Debtors") filed for Chapter 11 bankruptcy protection (the "Stone Barn Bankruptcy Cases"), and on or about August 25, 2008, the Stone Barn Debtors sold substantially all of their assets to the Debtors.

5.      Prior to the Petition Date, the Debtors decided, in consultation with their lenders and other parties, that the appropriate course of action to maximize value for the benefit of all of their stakeholders was an orderly liquidation in Chapter 11 utilizing going out of

business sales. Such going out of business sales were completed in January 2010, and the Debtors then worked to wind-down the estates.

6.     On November 16, 2010, this Court entered an order converting the Debtors' Chapter 11 Cases to Cases under Chapter 7, and Robert Geltzer was appointed as Interim Trustee (the "Trustee").

## FACTUAL BACKGROUND

7.     On December 15, 2008, this Court entered an order (the "Retention Order") authorizing the Debtors to retain and to employ Cahill as bankruptcy and restructuring counsel for the Debtors. A true and correct copy of the Retention Order is attached hereto as Exhibit A and is incorporated herein by reference.

8.     On May 13, 2009, Cahill filed its first interim fee application, seeking interim allowance of reasonable compensation for actual and necessary services rendered to the Debtors from November 19, 2008, through and including March 31, 2009 (the "First Application Period"), in the amount of $1,171,761.80, and reimbursement of actual and necessary expenses incurred in connection therewith, in the amount of $121,997.80 (ECF No. 423).

9.     Cahill agreed to a reduction of $14,500, and on June 29, 2009, this Court entered an order awarding Cahill $1,171,261.80, subject to a continuing 10% holdback, in compensation for actual and necessary services rendered, and $107,997.80, in reimbursement of actual and necessary expenses incurred during the First Application Period (ECF No. 469).

10.     On September 22, 2009, Cahill filed its second interim fee application, seeking interim allowance of reasonable compensation for actual and necessary services rendered to the Debtors from April 1, 2009, through and including August 31, 2009 (the "Second

Application Period"), in the amount of $325,916.20, and reimbursement of actual and necessary expenses incurred in connection therewith, in the amount of $11,199.99 (ECF No. 611).

11.     Cahill agreed to a reduction of $2,713.75 in expenses and, at the request of this Court, reduced its fees by $1,602.00, and on November 20, 2009, this Court entered an order awarding Cahill $324,314.20, subject to a continuing 10% holdback, in compensation for actual and necessary services rendered and $8,486.24 in reimbursement of actual and necessary expenses incurred during the Second Application Period (ECF No. 612).

12.     On January 29, 2010, Cahill filed its third interim fee application, seeking interim allowance of reasonable compensation for actual and necessary services rendered to the Debtors from September 1, 2009, through and including December 31, 2009 (the "Third Application"), in the amount of $135,140.40, and for reimbursement of actual and necessary expenses in connection therewith in the amount of $3,272.38 (ECF No. 665). On March 10, 2010, the Committee filed a limited objection to the Third Application (ECF No. 680). On May 4, 2010, in connection with certain issues raised by the Office of the United States Trustee, Cahill filed certain revised time entries and voluntarily reduced its request for compensation to $134,082.60, and for reimbursement of actual and necessary expenses incurred to $3,269.20 (ECF No. 742). On October 15, 2010, 45220, Inc., filed an objection to all applications (including the Third Application) seeking payment for professional fees (ECF No. 837). No hearing has been held to consider the Third Application.

13.     On October 27, 2010, Cahill filed its fourth interim fee application, seeking interim allowance of reasonable compensation for actual and necessary services rendered to the Debtors from January 1, 2010, through and including September 30, 2010 (the "Fourth Application), in the amount of $354,553.40, and for reimbursement of actual and

necessary expenses in connection therewith in the amount of $5,396.18 (ECF No. 840). No hearing has been held to consider the Fourth Application.

14.    As discussed in greater detail below, Cahill's activities on behalf of the Debtors throughout the Final Application Period were substantial, beneficial, and necessary to the Debtors and their estates. During the Final Application Period, Cahill was confronted with a multitude of issues vital to the Debtors' bankruptcy cases.[2]

15.    The names and hourly rates for all Cahill attorneys and paraprofessionals that have worked on this matter, as well as their year of admission to the bar, where applicable, are attached hereto as Exhibit B. The Certification of Joel H. Levitin, a Cahill partner, in support of the Final Application is attached hereto as Exhibit C.

16.    In accordance with this Court's Administrative Order Establishing Procedures for Interim Compensation, dated December 15, 2008 (the "Interim Compensation Order"), Cahill has served the following Notices of Monthly Fee and Expense Invoice for fees and expenses associated with the Final Application Period (each, a "Monthly Statement") in these cases:

> (A)    on December 31, 2008, Cahill served a Monthly Statement for fees accrued in the amount of $207,801 and expenses incurred in the amount of $5,159.05 from the Petition Date through and including November 30, 2008;

> (B)    on January 15, 2009, Cahill served a Monthly Statement for fees accrued in the amount of $387,017.60 and expenses incurred in the amount of $65,870.07 for December 2008;

---

2    Cahill notes that it has not charged the Debtors for material fees and expenses totaling what is likely approximately $100,000, in connection with addressing budgetary and related issues. Cahill reserves its right to request compensation and reimbursement of such amounts.

(C)     on February 11, 2009, Cahill served a Monthly Statement for fees accrued in the amount of $238,419.40 and expenses incurred in the amount of $11,563.89 for January 2009;

(D)     on March 11, 2009, Cahill served a Monthly Statement for fees accrued in the amount of $213,873.60 and expenses incurred in the amount of $29,388.91 for February 2009;

(E)     on April 15, 2009, Cahill served a Monthly Statement for fees accrued in the amount of $124,650.20 and expenses incurred in the amount of $10,015.88 for March 2009;

(F)     on May 18, 2009, Cahill served a Monthly Statement for fees accrued in the amount of $78,130.60 and expenses incurred in the amount of $4,280.15 for April 2009;

(G)     on June 10, 2009, Cahill served a Monthly Statement for fees accrued in the amount of $55,137.20 and expenses incurred in the amount of $2,052.23 for May 2009;

(H)     on July 21, 2009, Cahill served a Monthly Statement for fees accrued in the amount of $35,441.20 and expenses incurred in the amount of $2,353.15 for June 2009;

(I)     on August 20, 2009, Cahill served a Monthly Statement for fees accrued in the amount of $76,441.20 and expenses incurred in the amount of $1,225.77 for July 2009;

(J)     On September 16, 2009, Cahill served a Monthly Statement for fees accrued in the amount of $80,766.00 and expenses incurred in the amount of $1,288.69 for August 2009;

(K)     on October 16, 2009, Cahill served a Monthly Statement for fees accrued in the amount of $53,809.20 and expenses incurred in the amount of $2,266.37 for September 2009;[3]

(L)     on November 17, 2009, Cahill served a Monthly Statement for fees accrued in the amount of $38,220.00 and expenses incurred in the amount of $959.01 for October 2009;[4]

---

[3]     As set forth in more detail below, Cahill has voluntarily reduced its request for fees accrued by $306.00 and for expenses incurred by $520.00 for September 2009.

[4]     As set forth in more detail below, Cahill has voluntarily reduced its request for expenses incurred

Footnote continued on next page.

(M)     on December 16, 2009, Cahill served a Monthly Statement for fees accrued in the amount of $24,607.60 and expenses incurred in the amount of $451.85 for November 2009;[5]

(N)     on January 6, 2009, Cahill served a Monthly Statement for fees accrued in the amount of $19,248.40[6] and expenses incurred in the amount of $846.40 for December 2009;

(O)     on February 16, 2010, Cahill served a Monthly Statement for fees accrued in the amount of $39,115.20 and expenses incurred in the amount of $495.78[7] for January 2010;

(P)     on May 24, 2010, Cahill served a Monthly Statement for fees accrued in the amount of $49,374.20 and expenses incurred in the amount of $550.67 or February 2010;[8]

(Q)     on May 24, 2010, Cahill served a Monthly Statement for fees accrued in the amount of $74,736.80 and expenses incurred in the amount of $752.80 for March 2010;[9]

(R)     on May 24, 2010, Cahill served a Monthly Statement for fees accrued in the amount of $18,808.40 and expenses incurred in the amount of $306.18 for April 2010;[10]

---

Footnote continued from previous page.

by $585.00 for October 2009.

[5]     As set forth in more detail below, Cahill has voluntarily reduced its request for fees accrued by $102.00 and for expenses incurred by $65.00 for November 2009.

[6]     As set forth in more detail below, Cahill has voluntarily reduced its request for fees accrued by $336.80 and for expenses incurred by $81.25 for December 2009.

[7]     The coversheet for this monthly fee statement incorrectly states that Cahill is seeking $478.98 in reimbursement of expenses. Cahill is further reducing its request by $204.00 on account of fees incurred delivering courtesy copies to the Court and $195.00 for expenses associated with word processing.

[8]     As set forth in more detail below, Cahill has voluntarily reduced its request for fees accrued by $5,791.20 and for expenses incurred by $991.25 for February 2010.

[9]     As set forth in more detail below, Cahill has voluntarily reduced its request for fees accrued by $1,477.20 and for expenses incurred by $455.00 for March 2010.

[10]    As set forth in more detail below, Cahill has voluntarily reduced its request for fees accrued by

Footnote continued on next page.

(S)     on June 28, 2010, Cahill served a Monthly Statement for fees accrued in the amount of $42,706.80 and expenses incurred in the amount of $254.69 for May 2010[11];

(T)     on July 30, 2010, Cahill served a Monthly Statement for fees accrued in the amount of $46,635.60 and expenses incurred in the amount of $1,407.96 for June 2010;[12]

(U)     on August 24, 2010, Cahill served a Monthly Statement for fees accrued in the amount of $32,826.00 and expenses incurred in the amount of $594.74 for July 2010;[13]

(V)     on September 28, 2010, Cahill served a Monthly Statement for fees accrued in the amount of $27,250.80 and expenses incurred in the amount of $1,032.49 for August 2010;[14]and

(W)     on October 15, 2010, Cahill served a Monthly Statement for fees accrued in the amount of $21,303.60 and expenses incurred in the amount of $195.86 for September 2010.[15]

17.     Pursuant to the Interim Compensation Order, the United States Trustee, the Debtors, counsel to Ableco, and counsel to the Committee were served with a copy of each

---

Footnote continued from previous page.

$434.80 and for expenses incurred by $97.50 for April 2010.

[11]     As set forth in more detail below, Cahill has voluntarily reduced its request for fees accrued by $264.00 and for expenses incurred by $48.75 for May 2010.

[12]     As set forth in more detail below, Cahill has voluntarily reduced its request for fees accrued by $861.20 and for expenses incurred by $373.75 for June 2010.

[13]     As set forth in more detail below, Cahill has voluntarily reduced its request for fees accrued by $204.00 and for expenses incurred by $146.25 for July 2010.

[14]     As set forth in more detail below, Cahill has voluntarily reduced its request for expenses incurred by $110.50 for August 2010.

[15]     As set forth in more detail below, Cahill has voluntarily reduced its request for expenses incurred by $156.00 for September 2010.

Monthly Statement. A copy of each Monthly Statement is attached hereto as Exhibit D and is incorporated herein by reference.

18.     Attached hereto as Exhibit E is a summary of the fees accrued in the amount of $11,662.80 and expenses incurred in the amount of $395.98 during October 2010.[16] Cahill did not submit monthly fee statements for such period.

19.     Attached hereto as Exhibit F is a summary of the fees accrued in the amount of $18,102.00 and expenses incurred in the amount of $190.10 for the period from November 1 through and including November 16, 2010.[17] Cahill did not submit monthly fee statements for such period.

20.     As of the date hereof, Cahill has been paid $1,559,416.11 of the total $2,139,712.30 requested herein.[18] Cahill holds a retainer in the amount of $16,267.96.

21.     This Final Application does not detail every correspondence, drafting session, meeting, discussion, pleading prepared, or conference held, all research conducted, or each of the numerous tasks performed by Cahill during the Final Application Period. Those matters are set forth in detail in the contemporaneous time records attached to the Monthly

---

[16]     As set forth in more detail in Exhibit E, Cahill has voluntarily reduced its request for fees accrued by $77.60 and for expenses incurred by $188.50 for October 2010.

[17]     As set forth in more detail in Exhibit F, Cahill has voluntarily reduced its request for fees accrued by $88.00 and for expenses incurred by $84.50 for the period from November 1 through and including November 16, 2010.

[18]     Although Cahill should have been paid in the ordinary course of these cases in accordance with orders of this Court, and funds were specifically carved out from the lenders' liens to cover such payments, the Debtors have not made any payments to Cahill since January 7, 2010. The lack of funds available for the Debtors to make payments to Cahill was largely due to the improper payment of fees to the Committee's professionals, as detailed in *Debtors' Emergency Motion for Turnover of Funds Improperly Paid to Committee Professionals and Related Relief* (the "Turnover Motion") (ECF No. 869).

Statements and the invoices attached as exhibits thereto, which are divided into specific categories and indicate the date services were performed, the name of the professional or paraprofessional who rendered the services, a description of the services provided, the amount of time expended, and the cost of such services.

## RELIEF REQUESTED[19]

22.     By this Final Application, Cahill seeks an order awarding it reasonable compensation for actual and necessary services rendered to the Debtors during the Final Application Period, in the amount of $2,013,976.80, and for reimbursement of actual and necessary expenses incurred in connection therewith, in the amount of $125,735.50.

## SUMMARY OF REQUESTED COMPENSATION

23.     Cahill has calculated its request for compensation by multiplying the reduced hours of time spent on services rendered on behalf of the Debtors by the hourly rate assigned to each attorney and paraprofessional rendering such services. In accordance with the Court's and the Office of the United States Trustee's views with respect to prior fee applications, Cahill has removed charges for fees incurred in delivering filed papers to the Court and for word processing expenses, and certain other charges as set forth in the Monthly Statements. In addition, Cahill did not bill the Debtors for what is likely at least $100,000 of fees related to time devoted, among other things, to budgetary issues related to payments to the Committee's professionals and related disputes, including amounts that have been incurred (and that continue

---

[19]     To the extent that charges for services rendered or expenses incurred relate to the Final Application Period, but were not processed prior to the preparation of, or otherwise included in, this Final Application, Cahill reserves the right to request additional compensation for such services and reimbursement of such expenses.

to be incurred) relating to the enforcement of orders protecting professionals in these cases; Cahill reserves all rights with respect to such fees and expenses.

24.     During the Final Application Period, Cahill expended at least 3,690.75 professional hours on services rendered on behalf of the Debtors and requests reasonable compensation in the reduced amount of $2,013,976.80 for such services. Cahill respectfully submits that the fees sought herein are reductions from what is customary and based on its normal criteria in matters of this nature.

25.     During the Final Application Period, in rendering services to the Debtors, Cahill incurred reasonable, actual, and necessary expenses and requests reimbursement in the reduced amount of $125,735.50. An itemized account of such actual and necessary expenses is included in each Monthly Statement. All such expenses are reflected in the books and records of Cahill, contemporaneously maintained in the ordinary course of its business.

## DESCRIPTIONS OF SERVICES RENDERED

26.     The following are narrative descriptions summarizing the areas to which Cahill has devoted substantial attention during the Final Application Period.[20]

## CASE ADMINISTRATION

27.     Cahill performed a wide variety of tasks necessary to effectively administer the Debtors' bankruptcy cases. In particular, Cahill monitored the official docket for these cases and related proceedings, communicated with the Court and other professionals regarding motions, objections, deadlines and hearings, filed and arranged for service of

---

[20]     Some narrative time descriptions may have been inadvertently included in Cahill's time records in categories different from those described herein.

numerous documents in these and related cases, and prepared documents and exhibits for use by attorneys at hearings.

## ASSET ANALYSIS AND RECOVERY

28.     Cahill devoted significant time and resources to analyzing the various assets of the debtors and their estates and to attempting to recover assets transferred both before and after the Petition Date.  Among other things, Cahill investigated various potential causes of action, including turnover actions and other avoidance claims, and drafted and prosecuted several related motions.  Cahill also settled various of these matters (and documented such resolutions). In addition, Cahill negotiated the terms of discovery and related matters with the Committee. Finally, Cahill devoted substantial time and efforts in connection with the Turnover Motion. [21]

## ASSET DISPOSITION

29.     During these cases, Cahill drafted and prosecuted motions to conduct store closing sales, consummate transactions related thereto, abandon certain assets, and various related matters.   In connection with such motions and related efforts, the Debtors devoted significant amounts of time to researching appropriate procedures and resolving issues with multiple parties.

30.     For example, Cahill resolved a dispute with Priority Payment Systems, LLC ("PPS"), the Debtors' credit card processor, and thereby ensured that the Debtors consummated the going-out-of-business sales (which would have been impossible without the credit card processing services of PPS).

---

[21]     Cahill did not bill the Debtors for what is likely approximately $100,000 of time devoted to the enforcement of orders protecting professionals in these cases, as detailed in the Turnover Motion. Cahill reserves its right to request compensation and reimbursement of such time and expenses.

### RELIEF FROM STAY AND ADEQUATE PROTECTION PROCEDURES

31.     Among other things, Cahill participated in a telephonic hearing, responded to a motion for relief from the automatic stay, and negotiated and drafted a settlement stipulation.

### MEETINGS OF AND COMMUNICATIONS WITH CREDITORS

32.     Cahill assisted the Debtors in preparing for, and attended, the meeting of creditors pursuant to Bankruptcy Code § 341 and various meetings and discussions with the Committee.

33.     Cahill also responded directly to numerous inquiries from creditors and the Committee and provided various parties with information and documents in response to requests.  Specifically, as the deadline for filing proofs of claim approached, Cahill discussed issues with, and responded to, former employees, utility providers, governmental agencies and counsel to the Committee.

### FEE/EMPLOYMENT APPLICATIONS

34.     Cahill drafted and prosecuted applications to retain (a) Cahill, (b) RAS Management Advisors, LLC,  (c) Kurtzman Carson Consultants LLC, (d) Retail Consulting Services, Inc. (d/b/a RCS Real Estate Advisors), (e) Jackson Lewis LLP, and (f) Otterbourg, Steindler, Houston & Rosen, P.C.  Cahill had numerous discussions with the Debtors and other parties to review procedures for complying with the various retention and related procedures orders entered in these cases.

35.     Cahill also drafted the Monthly Statements described above and attached hereto as Exhibit D for services it rendered in these cases.  Finally, Cahill drafted fee applications for itself and for Jackson Lewis LLP.

## ASSUMPTION/REJECTION OF LEASES AND CONTRACTS

36.     Cahill analyzed various agreements and relationships of the Debtors with certain parties, addressed client inquiries regarding leases and contracts, coordinated with counsel and drafted motions, notices, responses, and related documents concerning the assumption and rejection of certain executory contracts and unexpired leases.  For example, Cahill drafted and prosecuted an objection to a motion to compel filed by Vornado 692 Broadway LLC, VNO 100 West 33rd Street LLC, Vornado Broadway Mall LLC, VNO Patson Cannery LP and Bevcon II LLC (collectively, the "Vornado Landlords").  Cahill devoted significant time to calls with the Vornado Landlords, the Committee, and counsel to Stone Barn and was able to successfully negotiate a settlement stipulation.

## OTHER CONTESTED MATTERS

37.     Cahill drafted numerous motions, stipulations, settlement agreements, and replies to objections during the cases, and Cahill attorneys prepared for and participated in numerous hearings during these cases.  Moreover, Cahill devoted significant time and resources to negotiations with the Debtors' lenders, creditors, and other parties-in-interest and preparation for and attendance at hearings.  In particular, Cahill attorneys negotiated settlements to turnover actions, a dispute with the Debtors' credit card servicer, and parties to license agreements.  In addition, Cahill drafted and prosecuted motions to extend various deadlines.

38.     Cahill also addressed issues concerning third-party discovery in pending litigation, drafted  stipulations, and participated in numerous discussions and negotiations with the Debtors' lenders, creditors, counsel to the Stone Barn Debtors, and other parties-in-interest.

## BUSINESS ADVICE AND OPERATIONS

39.     Cahill assisted and advised the Debtors in addressing various aspects of their business operations, including operational and creditor-related issues, the duties of debtors-in-possession in Chapter 11, and general legal matters.  Cahill prepared for and attended several hearings related to motions and other documents filed during these cases.

40.     Moreover, of particular note, Cahill advised the Debtors regarding issues with respect to the Stone Barn Bankruptcy Cases, operational inquiries, and document retention issues.

## EMPLOYEE-RELATED MATTERS

41.     Cahill collaborated with special employment law counsel to advise the Debtors on issues relating to a class action filed against them under the WARN Act.  Cahill had a major role in the strategic decisions affecting this litigation and took the lead in drafting the Debtors' memorandum of law in opposition to class certification.  Cahill followed up this extensive drafting by providing to the Court, through employment law counsel, a letter calling into question the legal positions articulated by the named plaintiff.  In addition, Cahill led discussions with plaintiff's counsel and facilitated settlement negotiations.

42.     Cahill also devoted attention to issues involving the Debtors' employees in the United States and India, as well as various employee benefits programs, including a 401K plan and 529 college savings plan.

## FINANCING/CASH COLLATERAL

43.     During these cases, Cahill assisted the Debtors with several crucial financing matters.  Initially, Cahill drafted and prosecuted a DIP motion, DIP agreement, and obtained approval of two interim DIP orders.  Cahill also negotiated the terms of several

subsequent stipulations, including the cash collateral stipulation that governed the wind down of the estates and provided for payment of administrative expenses, and worked with the Debtors to open new bank accounts and drafted and filed a motion to transfer funds to the new bank accounts. In addition, Cahill advised the Debtors on the terms of such and other agreements and assisted with related issues, including making numerous related court appearances.

44.     Cahill also devoted significant efforts to filing papers and appearing at hearings and meetings regarding Ableco's motion to convert the Debtors' cases under Chapter 7.[22]

## TAX ISSUES

45.     Cahill provided general advice to the Debtors on certain potential tax issues and participated in several related calls

## CLAIMS ADMINISTRATION

46.     During the Final Application Period, Cahill responded to inquiries from creditors regarding proofs of claims and the claims reconciliation process and participated in numerous calls with counsel to the Stone Barn Debtors and the Committee relating to administrative claims. Cahill also drafted and filed numerous objections to administrative claims, reviewed responses filed by claimants, and attended hearings to consider such claim objections.

47.     As a result of Cahill's efforts and the time devoted by Cahill attorneys to analysis and resolution of administrative and priority claims, almost all such claims were

---

[22]     Much of the fees and expenses related to such matters was not billed to the Debtors. Cahill reserves its right to request compensation and reimbursement of such time and expenses.

disallowed or resolved with minimal payment required by the Debtors. Included among the disallowed administrative claims were claims asserted by various taxing authorities located in the State of Texas. Cahill devoted substantial time to the resolution of these claims and was ultimately successful based upon a novel legal theory that the Court viewed to be compelling. Because any remaining claims had been heavily negotiated by Cahill, and related objections detailed the legal bases upon which the Court should deny the claims, the Trustee was able to step in and finalize resolution of the few remaining disputed claims with minimal effort. Moreover, because Cahill negotiated the terms of a stipulation with the Stone Barn Debtors (ECF No. 881) prior to the conversion of the cases, significant funds were returned to the estates, and claims and potential issues relating to the Stone Barn Debtors were resolved pursuant to an agreement (ECF No. 907) substantially similar to the stipulation negotiated by Cahill, with minimal efforts of the Trustee.

## STATUTORY AUTHORITY

48. Bankruptcy Code § 330 provides for the payment of interim compensation to, among others, "any professional person[s] employed under Section 327 or 1103 of [the Bankruptcy Code]." In determining the definition of "reasonable compensation" under Bankruptcy Code § 330(a)(1), courts look to the factors set forth in Bankruptcy Code § 330(a)(3), which provides that:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;

(C)      whether the services were necessary to the administration of, or beneficial at the time at which the services were rendered toward the completion of, a case under this title;

(D)      whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)      with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)      whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in case other than cases under this title.

49.      Under the standards set forth in Bankruptcy Code § 330(a), Cahill's representation of the Debtors in these cases warrants payment of its fees and reimbursement of its expenses. Cahill has expended more than 3,690.75 hours in its representation of the Debtors during the Final Application Period, with an adjusted blended average billable rate of less than $546 per hour. All of the time spent by Cahill in these cases was necessary and appropriate and benefited the Debtors, their estates, their creditors, and other parties-in-interest. Cahill's representation of the Debtors required it to balance the need to provide quality services with the need to act quickly, and Cahill submits that it has represented the Debtors in an efficient, timely, and cost-effective manner.

50.      Additionally, the experience, knowledge, and expertise of the various Cahill professionals representing the Debtors in these cases have facilitated and expedited the results achieved. Providing bankruptcy and restructuring advice to large companies in Chapter 11 is a specialized practice that requires attorneys, such as the Cahill attorneys involved in this matter, with expertise in various areas of the law. Cahill's representation of the Debtors in these

cases took time and effort that was not therefore available to provide comparable services to other current or potential clients.

51.     Moreover, the hourly rates charged by Cahill for the services performed in these cases are consistent with (or lower than) the hourly rates charged by Cahill in other similar matters and representations under like circumstances and are comparable to the usual and customary charges of other professionals with similar degrees of skill and expertise.  The fees and expenses for which Cahill seeks compensation and reimbursement are not excessive and are commensurate with (or lower than)[23] the compensation sought and awarded in similar cases for similar services rendered and results obtained by both Cahill and Cahill's peer law firms.

52.     Thus, in accordance with the factors enumerated in Bankruptcy Code § 330(a), the amounts requested herein by Cahill are fair and reasonable given the complexity of these cases, the actual time expended, the nature and extent of the services rendered, the value of such services, and the cost of comparable services in cases other than under the Bankruptcy Code.

## CONCLUSION

WHEREFORE, Cahill respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit G, (i) awarding it $2,013,976.80, as the fair and reasonable value of its actual and necessary professional services rendered to the Debtors

---

[23]     For example, counsel to the Committee in these cases has filed a final application for compensation in the amount of $2,697,432.90 and reimbursement of expenses in the amount of $55,814.59 (ECF No. 920).  While counsel to the Committee purportedly made every "effort to salvage any possible value that could be used for a distribution to unsecured creditors" [p. 3]  at a cost to the estates that was more than $600,000 in excess of the compensation sought by Cahill, it was Cahill, and not the Committee's professionals that administered these cases, including resolving almost all administrative claims in an effort to maximize distributions.

during the Final Application Period, (ii) awarding it $125,735.50, as reimbursement for its actual and necessary expenses incurred during the Final Application Period, and (iii) such other and further relief as is just and proper under the circumstances of these cases.

Dated: New York, New York
      July 22, 2011

CAHILL GORDON & REINDEL LLP

/s/ Joel H. Levitin
Joel H. Levitin
Richard A. Stieglitz Jr.
Eighty Pine Street
New York, New York  10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420
jlevitin@cahill.com
rstieglitz@cahill.com

*Attorneys for the Chapter 11*
*Debtors and Debtors-in-Possession*